HAWKINS, ADMX., ET, PLAINTIFF, *v.* GRABER ET, DEFENDANTS.

Common Pleas Court, Sandusky County.

No. 29565.   Decided November 29, 1963.

436

Mr. *Carl F. Dorcas* of *Messrs. Miller, Downing, DeMuth & Dorcas,* and *Mr. John D. Starn,* for plaintiff.

Mr. *A. L. Hyzer,* of *Messrs. Culbert, Hyzer & Culbert,* for defendant.

GABEL, J.   This matter comes on to be heard on the pleadings, the evidence and the briefs of counsel.

Plaintiff by Supplemental Petition seeks a judgment against defendant, The Buckeye Union Casualty Company, in the sum of one thousand dollars with interest from November 14, 1961.

Plaintiff claims defendant Evelyn Graber was entitled to the protection of Policy No. VP-813724 issued April 25, 1954, to Bertha G. Graber and indemnifying Bertha G. Graber and any

other person operating the automobile of Bertha G. Graber with her express or implied consent against any liability imposed by law for personal injuries while her policy was in force.

A judgment in the amount of one thousand dollars entered against Evelyn Graber November 14, 1961, arose out of an automobile collision on October 21, 1954, between the 1947 Plymouth special deluxe sedan of Bertha G. Graber, operated by Evelyn Graber, and the automobile of the plaintiff's decedent, Don P. Hawkins.

Defendant insurance company denies any liability claiming the indemnifying insurance policy lasped for failure to pay the fourth installment premium due on August 25, 1954, under the provisions of Item 8 of the policy of insurance.

The evidence bears out the following undisputed facts:

No. 1—It is undisputed that a five-pay plan automobile policy No. VP-813724 was issued by The Buckeye Union Casualty Company to Bertha G. Graber effective April 25, 1954, covering the following described automobile:

A 1953 Pontiac Chieftain Deluxe Four-Door Sedan.

No. 2—It is undisputed that an automobile transfer endorsement effective July 21, 1954, and issued on *August 6, 1954*, transferred the insurance from a Pontiac Chieftain Deluxe Four-Door Sedan to a 1947 Plymouth Special Deluxe Sedan with reduction in the total premium in the amount of $11.46 which was to be credited to the final installment payable October 25, 1954, under the provisions of Item 8 of the policy; and it is further undisputed, as evidenced by Plaintiff's Exhibit No. 1, that the credit was due to the difference in value between the 1953 Pontiac Chieftain Deluxe Four-Sedan and the 1947 Plymouth Special Deluxe Sedan and that said credit was applied to the fifty dollar deductible collision feature of the policy.

No. 3—It is undisputed that under Item 8 of said policy the first, second and third premium payments were made to the Hodges Insurance Agency although apparently none of them were made on time.

No. 4—It is undisputed that the defendant, Evelyn Graber, at the time of the collision with the plaintiff's decedent's car was operating the Plymouth Special Deluxe Sedan which is the subject of the automobile transfer endorsement (Plaintiff's

Exhibit No. 1) and she was doing so with the consent of the owner.

No. 5—It is undisputed that the company did not receive the fourth payment at its home office in the amount of $22.00 due and payable on or before August 25, 1954, and as required by Item 8 of the policy (Plaintiff's Exhibit No. 2).

As to all other matters the evidence is in conflict. The principal conflict revolves around the question of whether Dale Graber made the fourth installment payment as he claims on or about August 20, 1954. On this subject the plaintiff introduced the testimony of Dale Graber, Garland L. Smith and Olive Hodges. Plaintiff makes no claim that this installment was paid directly to the company under Clause 22 of the "Conditions" of the policy but does claim that the payment was made to Ferne McCormick Sage who was the agent of the company at Wayne, Ohio.

Dale A. Graber, the son of Bertha G. Graber, and the former husband of Evelyn Graber, testified that on or about August 20, 1954, he went to Wayne, Ohio, to the office of the Hodges Insurance Company in company with Garland L. Smith; that on that occasion he made a cash payment to Ferne McCormick Sage representing, as he claims, the fourth installment due on the policy in the amount of $22.00. He claims he got no receipt for the payment for the reason that Ferne was busy and could not find the receipt book. He also claims and admits he had some conversation with Olive Hodges while there. His testimony also indicates that he had been to the same office for the purpose of arranging for a transfer of the policy from the Pontiac sedan to the Plymouth sedan on or about August 6, 1954, the date shown on the transfer endorsement.

Garland L. Smith testified that he accompanied Graber on the occasion when the alleged payment was made on the fourth installment but he does not remember how or in what amount the payment was made, whether it was by cash or check; he does not remember the hour of the day that they visited the office; he does not remember what day of the month it was, except that it was hot and therefore it must have been the month of August; he does not remember what kind of car Graber was driving on that occasion; he does not know, accord-

ing to his testimony, who was there at that time. In other words, his memory is faulty as to all other matters except the fact of payment.

Olive Hodges testified that she is the daughter of the former owner of the Hodges Insurance Agency; upon the death of her father she testified he willed the agency and the business of the agency to Ferne McCormick Sage; she testified that records still in her possession indicated payment of $33.00 on May 24, 1954. It is agreed that this payment represented the first and second installments, that is an installment of $11.00 and another installment of $22.00. She recalls that on the occasion that she talked to Dale Graber that he was accompanied by a young man whom she could not identify. However, she stated that on this occasion the only discussion she had with Graber was about the transfer of insurance from the Pontiac to the Plymouth and at that time he expressed to her the opinion that his insurance would be cheaper. He also discussed with her his pending induction into the armed services. There was no discussion with her as to any intent or purpose to pay a premium due on the policy.

The testimony of all witnesses with reference to the subject of the payment of the fourth installment indicates that there was only one occasion when Dale Graber was accompanied by anyone else. That occasion is in dispute as to whether it was when the transfer was made from the Pontiac to the Plymouth on August 6th or whether it was on or about August 20th as claimed by Graber, or whether it was May 24th when he paid the first and second installments.

However, the Court is of the opinion that the visit to the Wayne office of the Hodges Insurance Company when Dale Graber was accompanied by Garland L. Smith could just as well have been August 6th when Graber was seeking a transfer endorsement from the Pontiac to the Plymouth as evidenced by the testimony of Olive Hodges.

On Cross-examintion on the subject of the payment of the fourth installment Ferne McCormick Sage testified that no such payment was made. She was of the opinion that someone accompanied Graber when he made the May 24th payment, that is the payment of $33.00 representing the first and second installments. She further testified that it was August 6th when

Graber came to the office to transfer the policy from the Pontiac to the Plymouth.

It is the opinion of the Court that in the light of this testimony there is insufficient evidence to warrant the Court in finding that the plaintiff has sustained the burden of proof as to the payment of the fourth installment.

Mr. Andrews, an official of The Buckeye Union Casualty Company, testified that the insured, Bertha G. Graber, was notified that the policy had lapsed. He claims that she got her first lapse notice mailed immediately upon the lapse and then a final notice twenty days thereafter and that after the final notice it was too late to re-open the insurance. He further testified that if there had been any effort to make payment after the final lapse notice, that is after the expiration of twenty days, that the payment would not have been accepted.

*Assuming* that the fourth payment had been made, as claimed by the plaintiff, to Ferne McCormick Sage, the agent for the company at Wayne, Ohio, under Item 8 on page 1 of the policy and under Clause 22 of the "Conditions" of the policy there was a specific, mandatory provision requiring the third, fourth and fifth payments to be made direct to the home office of the company and under Clause 22 it was specifically and clearly provided in unambiguous language that "a remittance to an agent of the company shall not constitute payment hereunder unless nor until such payment is actually received at the home office of the company." The provisions of Item 8 and of Clause 22 of the "Conditions" of the policy are clear and unambiguous.

The contract of insurance does not forbid a payment to the agent of the company but it does require that any payment made to the agent must be received in the home office on or before the date the payment is due. It is the opinion of the Court that in an instance where the insured pays the agent of the company, under the terms of this type of policy, the agent of the company is acting as agent for the insured in forwarding the payment. In view of the clear and unambiguous language of Item 8 as well as the provisions of Clause 22 of the "Conditions" of the policy it is the opinion of the Court that the agent of the company had no authority, either real or apparent, to waive any of the conditions of the policy.

At page 234, Section 221 of 30 Ohio Jurisprudence (2d), we find the following language:

"Thus, if the contract is stated in clear, positive and unambiguous terms useage or custom cannot be permitted to vary or contradict the terms used nor can unambiguous language creating an express exception from liability be overcome by evidence of a custom to the contrary. This is in accord with the rule that a custom or useage may add to but not take from a written contract to which it is sought to be applied."

Ordinarily an insurance premium should be paid in the manner provided by the terms of the policy (*Scott* v. *Continental Insurance Company*, 167 Ohio St., 515).

As to forfeiture or suspension of the provisions of the policy, the general rule is that a policy of insurance may validly stipulate that non-payment of premiums when due will effect a forfeiture. A policy may expressly provide for suspension of the risk during any period the premium for which is in default (Page 359, Section 385, 30 Ohio Jurisprudence [2d]).

The policy in question in this suit positively provided for forfeiture and for suspension of the risk of the insurer for non-payment of premium.

Plaintiffs make much of the fact that there was a credit of $11.46 that they claim represented unearned premium. Section 1 of Clause 22 of the "Conditions" of the policy provides as follows:

"In the event the third, fourth or fifth premium payment fails to reach the home office of the company on or before its respective due date, the policy and all *endorsements* issued therefor shall lapse and become null and void as of 12 o'clock midnight standard time on the date such payment is due, *and any premium theretofore paid shall be considered fully earned by the company.*"

There is no provision in the policy for the repayment of any unearned premium and it is the holding in the case of *Plotner* v. *The Buckeye Union Casualty Company*, 94 Ohio App., 94, that an unearned premium would be merely a debt owed by the insuring company to the insured.

Plaintiff further claims the insured had no final notice as to lack of coverage until December 6, 1954. According to the

testimony of Mr. Andrews, one of the officers of the company, notice of lapse was promptly mailed to the insured as well as to the mortgagee, The Cygnet Savings Bank Company of Wayne, Ohio, advising of the lapse immediately after non-payment of the fourth installment premium. Notice to the Cygnet Savings Bank Company, addressed to Wayne, Ohio, dated September 3, 1954 (Exhibit 29-C) reads as follows:

"This policy which was written on an installment basis carried a loss-payable clause specifying you as the mortgagee. The policy has lapsed because of non-payment and coverage has not been reinstated. In accordance with the provisions of the loss-payable clause coverage under the policy insofar as your inteerst only is concerned will be kept in force for ten days from the date hereof."

Plaintiff further claims the defendant insurance company waived forfeiture or was estopped from claiming forfeiture of the policy by the conduct and acts of its agents in the apparent or actual scope of their authority after the accident of October 21, 1954. Plaintiff bases this claim on the fact that after the accident the matter was reported to the Toledo office by Ferne McCormick Sage, following which, without confirming coverage or without checking with the home office, George L. Marshall, then an adjuster for the company, began an investigation of the incident by interviewing the decedent, Don P. Hawkins, and other witnesses to the accident. It is claimed by plaintiff (Exhibit 28) that the adjuster told Hawkins not to worry about the medical and hospital bills as the company would take care of them. Mr. Marshall has no recollection of making such a statement and if he did it would clearly be beyond the scope of his authority and would be a promise without any consideration. In this case the company through its agents engaged in preliminary investigation pending clarification of coverage. The home office was satisfied it had not received the fourth installment payment and insofar as the conditions of the policy were concerned coverage had lapsed. But, according to the testimony and the exhibits the company wanted to satisfy itself that the fourth payment had not been made to its agent, Ferne McCormick Sage, in which event it might well have considered a waiver of the conditions of the policy and at least made a defense for Evelyn Graber in the suit which resulted in judgment

against her in the amount of one thousand dollars under date of November 14, 1961. Since the insured had been given notice of lapse and was advised that after preliminary investigation of the accident the insurance company was denying liability the insured cannot complain that she has suffered any detriment. Defendant insurance company's liability is to the insured, not the plaintiff's decedent and therefore any promise made to Don P. Hawkins would be wholly immaterial and without consideration. Mere investigation of a loss does not restore the effectiveness of the policy (*Petersilge* v. *Crawford County Farmers Mutual Fire Insurance Company*, 130 Ohio St., 385).

On this phase of the case the Court cannot find there was any conduct that would work an estoppel or effect a waiver which would affirm the effectiveness of the policy.

Therefore, in accordance with this opinion, judgment is rendered in favor of defendants and plaintiff's petition is dismissed at plaintiff's costs. Counsel for defendant will draw entry. Exceptions noted.

HAWKINS, ADMX., ET, PLAINTIFF, *v.* GRABER, DEFENDANT, AND BUCKEYE UNION CASUALTY CO., SUPPLEMENTAL DEFENDANT.

No. 29565. Decided January 6, 1964.

*Mr. Carl F. Dorcas* of *Messrs. Miller, Downing, DeMuth & Dorcas*, and *Mr. John D. Starn*, for plaintiff.
*Mr. Thomas B. Stahl*, for The Buckeye Union Casualty Company, Supplemental defendant.

GABEL, J. On October 15, 1963, this cause came on for trial and was submitted to the Court, sitting without a jury, on the Supplemental Petition of the plaintiff, the Answer thereto of the supplemental defendant, the Reply thereto of the plaintiff, the evidence, and the briefs of counsel.

After due consideration, the Court find that the issues of law and fact involved in this matter should be resolved as follows:

1: A five-pay plan automobile policy, being Policy No. VP-813724, was issued by The Buckeye Union ·Casualty Com-

pany to Bertha G. Graber, effective April 25, 1954, covering a 1953 Pontiac Chieftan Deluxe Four-Door Sedan.

2: An automobile transfer endorsement, effective July 21, 1954, and issued on August 6, 1954, transferred the insurance from said Pontiac Chieftain Deluxe Four-Door Sedan to a 1947 Plymouth Special Deluxe Sedan, with reduction in the total premium in the amount of $11.46, which was to be credited to the final installment payable October 25, 1954, under the provisions of Item 8 of the policy. Said credit was due to the difference in value between the 1953 Pontiac Chieftain Deluxe Four-Door Sedan and the 1947 Plymouth Special Deluxe Sedan, and was applied to the fifty dollar deductible collision feature of the policy.

3: The defendant, Evelyn Graber, at the time of the collision with the plaintiff's decedent's car, was operating the Plymouth Special Deluxe Sedan which is the subject of the automobile transfer endorsement, and she was doing so with the consent of the owner.

4: Under Item 8 of the aforementioned policy, the first, second and third premium payments were made to the Hodges Insurance Agency, although apparently none of them was made on time.

5: The Buckeye Union Casualty Company did not receive the fourth payment at its home office in the amount of $22.00 due and payable on or before August 25, 1954, as required by Item 8 of said policy.

6: There is insufficient evidence to warrant the Court in finding that the plaintiff has sustained the burden of proof as to said plaintiff's contention that the fourth premium installment was paid at the office of the supplemental defendant's agency in Wayne, Ohio.

7: *Assuming* that the fourth payment had been made, as claimed by the plaintiff, to Ferne McCormick Sage, the agent for the company at Wayne, Ohio, under Item 8 on page 1 of the policy and under Clause 22 of the "Conditions" of the policy there was a specific, mandatory provision requiring the third, fourth and fifth payments to be made directly to the home office of the company, and under Clause 22 it was specifically and clearly provided in unambiguous language that "a remittance to an agent of the company shall not constitute payment here-

under unless nor until such payment is actually received at the home office of the company.'' Under the clear and unambiguous terms of the policy issued by the supplemental defendant herein, to Bertha G. Graber, even if Bertha G. Graber, acting by her son, delivered the fourth premium to Ferne McCormick (Sage), who was then a sales agent for the supplemental defendant, said Ferne McCormick (Sage) in receiving said payment would have been acting as agent for the insured in receiving and forwarding the payment, and not as agent for the insurance company.

8: In view of the clear and unambiguous language of Item 8 as well as the provisions of Clause 22 of the ''Conditions'' of the policy, the agent of the company had no authority, either real or apparent, to waive any of the conditions of the policy.

9: A policy of insurance may validly stipulate that non-payment of premiums when due will effect a forfeiture. A policy may expressly provide for suspension of the risk during any period the premium for which is in default. The policy in question in this suit positively provided for forfeiture and for suspension of the risk of the insurer for non-payment of premium.

10: The fact that the transfer endorsement issued by the supplemental defendant to the original defendant granted a credit which was to be applied against the final premium installment on the aforementioned policy did not foreclose the operation of the forfeiture or suspension provisions of the policy. By the terms of the policy, any premium paid prior to forfeiture for non-payment of premium was to be considered fully earned by the company. Even had such a provision not been in the terms of said policy, such a credit for paid but unearned premium would create merely a debt owed by the insuring company to the insured and would not effect a reinstatement of coverage for a period for which the premium had not been paid.

11: If the supplemental defendant's adjuster told the plaintiff's decedent not to worry about the medical and hospital bills and that the company would take care of them, such statement would clearly be beyond the scope of his authority and would be a promise without any consideration.

12: Since the insured had been given notice of lapse and

was advised that after preliminary investigation of the accident the insurance company was denying liability, the insured cannot complain that she has suffered any detriment.

13: The acts of the agents of the company in engaging in preliminary investigation pending clarification of coverage did not constitute conduct that would work an estoppel or effect a waiver which would affirm the effectiveness of the policy.

It is therefore ordered, adjudged and decreed that judgment herein be and hereby is rendered in favor of the supplemental defendant, The Buckeye Union Casualty Company, and said supplemental defendant shall go hence this day, and recover its costs herein from the plaintiff; to all of which Plaintiff excepts.

## MOTION FOR NEW TRIAL

No. 29565. Decided January 9, 1964.

Now comes the plaintiff herein and moves the Court for a new trial for the following causes affecting maaterially her substantial rights:

(1) That the final order, judgment, or decree is not sustained by sufficient evidence, or is contrary to law.

### CERTIFICATE

A copy of the foregoing motion was this ... day of January, A. D., 1964, mailed to Thomas B. Stahl, Attorney of Record for the supplemental defendant, The Buckeye Union Casualty Company, at his address, Stahl Building, Fremont, Ohio.

## JOURNAL ENTRY

No. 29565. Decided January 24, 1964.

GABEL, J. This cause being submitted to the Court upon the Motion for New Trial, filed by the plaintiff, after due consideration thereof the Court find that said Motion is not well taken.

Therefore, said Motion for a New Trial is hereby overruled. To all of which plaintiff excepts.