## MASSACHUSETTS PROTECTIVE ASS'N, Inc., v. TURNER.

No. 24140.    Jan. 29, 1935.

Rehearing Denied March 5, 1935.

Keaton, Wells, Johnston & Barnes, for plaintiff in error.

R. E. Bowling, for defendant in error.

PER CURIAM. This is an action wherein Albert Turner, as plaintiff, sued the Massachusetts Protective Association, Inc., on a health and accident policy issued to him by said company on August 23, 1927, to recover policy benefits claimed to be due him by reason of an accidental injury suffered by him on January 7, 1928, and its consequential disabilities. The company admitted the execution and delivery of the policy and the payment of the first quarterly premium thereon, but defended the action on two grounds, viz., the policy was lapsed when plaintiff was injured, and plaintiff's suit is barred by limitations. The case was tried to the court without a jury and the court found the issues in favor of plaintiff and granted him a judgment of $800.

The salient facts are as follows: On August 23, 1927, J. A. Bentley, a soliciting agent for defendant company, procured an application from Albert Turner for a health and accident policy in defendant company. At that time Turner paid the agent $17.50 as the first quarterly premium, for which the agent gave Turner a receipt. On this receipt it was written that the next quarterly premium would be due December 1, 1927. Questions 24 and 27 in the application with Turner's answers are as follows:

"24. What is the amount of next premium and its due date if application is accepted by association? Premium, $17.50. Due date, 12-1-27.

"27. Do you agree that verbal statements between the agent and yourself are not binding upon the association, unless accepted by the association in writing? Yes."

On Turner's application the company issued and delivered him the policy herein sued on, attaching and making a part thereof a photostatic copy of the application. The policy provides that the quarterly premium payments are due, in advance, on or before the first day of March, June, September, and December in each year. While it is disputed, yet the court below found and we take it as a proven fact that the agent told Turner he might pay the second quarterly premium on the policy any time in the month of January, 1928, notwithstanding the policy provision making it due December 1, 1927. On January 3, 1928, Turner mailed the company a check for $17.50 to pay the second quarterly premium, and the company received this check on January 16, 1928, and retained it. On January 7, 1928, Turner received injuries that disabled him for a period of eight months and resulted in the loss of an eye. On January 23, 1928, he mailed notice of disability to the company, and on February 17, 1928, the company answered, denying liability on the ground the policy lapsed on December 1, 1927, was not reinstated until January 16, 1928, and the injury having occurred between these two dates, i. e., on January 7, 1928, Turner was without protection by this policy. Turner did nothing further until some time in June, 1929, or about a year and four months later, and during that month he turned his policy over to either J. A. Bentley or M. P. Bentley, both of whom were soliciting agents for the company, on the promise that Turner would receive a "square deal" on his claim. This suit was filed on March 26, 1931, more than three years after the injury occurred.

This case presents three propositions for our determination: First, Was there a waiver of the policy provisions as to the time of the payment of the second quarterly premium, and as to limitation on the time within which suit might be brought on the policy? Second, When did the company "accept" Turner's check for the second quarterly premium, within the meaning of the policy? Third, Was the action barred by the limitation agreement in the policy?

As to the first proposition, it is undisputed that Turner's application (copy of which is a part of the policy), shows and the policy itself requires the payment of the second quarterly premium by December 1, 1927. Furthermore, on the receipt for the first quarterly premium it was written that the second quarterly premium would be due December 1, 1927. He does not claim he was prevented from reading his policy by any trick or fraud of the company. Under these circumstances, the law justly imputes to him knowledge of all policy provisions. This court holds that an applicant for insurance who accepts a policy, the provisions of which are plain, clear, and free from all ambiguity, is chargeable with knowledge of its terms and legal effect. It is the duty of the assured to read and know the contents of the policy before he accepts it, and where he fails or neglects to do so, he is estopped from denying knowledge of its terms and conditions unless he alleges and proves that he was induced not to read the policy by some trick or fraud of the other party. Liverpool, L. & G. Ins. Co. v. T. M. Richardson Lbr. Co., 11 Okla. 579, 69 P. 936; Maryland Cas. Co v. First State Bank, 101 Okla. 71, 223 P. 701.

Thus, with knowledge that the policy required the payment of the second quarterly premium on or before December 1, 1927, Turner never sought to make payment by that date, but mailed the company a check on January 3, 1928, and claims the policy did not lapse on December 1, 1927, because the company's agent, J. A. Bentley, told him he could pay this premium any time during the month of January, 1928, and this amounted to a waiver. This contention cannot be sustained, as Bentley was a soliciting agent only, and for that reason was without power to waive any policy provision. Modern Woodman v. Weekley, 42 Okla. 25, 139 P. 1138; State Mut. Ins. Co. v. Craig, 27 Okla. 90, 111 P. 325; Sullivan v. Mercantile Town Mut. Ins. Co., 20 Okla. 460, 94 P. 676; Dorman v. Conn. Fire Ins. Co., 41 Okla. 509, 139 P. 262; Shawnee Mut. Fire Ins. Co. v. McClure, 39 Okla. 535, 135 P. 1150; Merchants & Planters Ins. Co. v. Marsh, 34 Okla. 453, 125 P. 1100; Phipps v. Union Mut. Ins. Co., 50 Okla. 135, 150 P. 1083. The agent's lack of authority to waive policy provisions was not only recognized by Turner, in his application for the policy, but section 2 of the standard provisions of the policy, itself, provides that no change in the policy is valid unless approved by an executive officer of the association, and such approval is indorsed thereon. This limited grant of authority was the measure of Agent Bentley's power. Gish v. Insurance Co. of N. A., 16 Okla. 59, 87 P. 869; Sullivan v. Mercantile Town Mut. Ins. Co., supra. We therefore hold that Bentley could not and did not waive any provision in the policy.

As to the second proposition, the record shows that the policy lapsed on December 1, 1927, by reason of Turner's failure to pay the second quarterly premium on that date. On January 3, 1928, he mailed the company a check for $17.50 to cover this premium, which check the company actually received on January 16, 1928, and retained. Between these two dates, to wit, on January 7, 1928, Turner was injured. Section 3 of the standard provisions of the policy provides:

"If default be made in the payment of the agreed premium for this policy, the subsequent acceptance of a premium by the association or by any of its duly authorized agents shall reinstate the policy, but only to cover accidental injuries thereafter sustained and such sickness as may begin more than ten days after the date of such acceptance."

Thus the question is, "Did the mailing of the check on January 3, 1928, operate as an 'acceptance' thereof within the terms of this provision so that the policy would have been reinstated on January 3, 1928, before Turner was injured, or was the payment 'accepted' when the company actually received the check on January 16, 1928, and retained it?"

In support of his contention, Turner relies on that line of authority holding that if, under an existing policy, the insurer authorizes or acquiesces in the sending of premiums by mail, a deposit thereof in the mail in time to reach the home office by the time the premium is due will prevent a forfeiture, though the premium does not in fact reach the office until after the due date. Mutual Reserve Fund Life Ass'n v. Tuchfeld, 159 Fed. 833, and cases therein cited. This line of authority is not in point here, for the reason there was no existing policy when the check was mailed, it having lapsed, and there was no established custom of paying premiums by mail. Furthermore, under the policy, the company had the right of electing whether they would or would not accept the payment and permit the policy to be reinstated, and it cannot be said that such right of acceptance

had been exercised by it solely because Turner deposited his premium check in the mails, an act of which the company had no knowledge at the time and to which they gave no consent. "Acceptance" comprehends both physical receipt and mental assent, Vol. 1, Words & Phrases (First Ser.) 53, citing In re Geo. M. Hill Co., 123 Fed. 866, 59 C. C. A. 354; Hardman v. Bellhouse, 9 Mees. & W. 596, 600. We therefore hold that the company did not accept Turner's remittance until January 16, 1928, and the policy was not reinstated until that date. The injury having occurred after the policy lapsed and before its reinstatement, it does not protect Turner for loss of time occasioned by his injury of January 7, 1928.

The third proposition goes to the question as to whether this suit was filed within the limitation period of two years fixed by the policy. Turner alleges in his petition, and proved by his evidence, a disability period of eight months, occasioned by his injury of January 7, 1928. This disability period expired September 7, 1928. By section 7 of the standard provisions of the policy, he was required to make claim for loss of time within 90 days thereafter, which would be on or before December 7, 1928. He brought this suit on March 26, 1931, being two years and three months after his cause of action accrued. Turner seeks to avoid the debarring effect of his delay in bringing this suit by claiming that the "limitation agreement" in the policy was waived by the company when its soliciting agent, Bentley, took up his policy in June, 1929, and promised to see that Turner got a "square deal" on his claim. As has heretofore been pointed out, Bentley was without authority to waive any policy provision, being a soliciting agent only. The action is clearly barred by the limitation agreement embodied in the policy.

The judgment of the honorable trial court is therefore reversed, with instructions to dismiss the case.

The Supreme Court acknowledges the aid of Attorneys N. C. Barry, J. J. Smith, and Frank Nesbitt in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Barry and approved by Mr. Smith and Mr. Nesbitt, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.