The questions for determination in this case are whether the policy of monthly term accident insurance issued by the defendant on January 25, 1934, in which the insured's wife was named as beneficiary, was in force on October 10, 1945, on which date the insured suffered accidental death; and whether, if the policy of insurance was not in force at the time of the death of the insured, the insurer was, nevertheless, liable for the return of policy premiums because of a breach of the contract of insurance resulting from an alleged illegal termination of the policy.
The plaintiff claims that she is entitled to prevail on at least one of three theories: First, that the policy had been renewed, according to its terms, on June 11, 1945, by the payment of two premiums accepted by the local agent of the defendant and was kept alive by a payment and acceptance of two premiums on July 11, 1945. Second, that if the policy was not in continuous force because of late payments made by the insured to the agent of the defendant, it was reinstated under standard provision clause 3 by the agent's acceptance of two monthly premiums in the sum of $12.60 on June 11, 1945, and that the payment of $12.60 on July 11, 1945, to the defendant kept the reinstated policy in force until October 11, 1945, one day after the death of the insured. Third, that if the policy was not continuously in force, the plaintiff was entitled to a decree in equity for the return of the premiums paid on the policy, for the reason that the *Page 318 
defendant by its conduct wrongfully rescinded the policy which created in the name of the administratrix of the insured's estate a right to a return of premiums paid, with interest.
On the other hand, the defendant pleaded in its answer two affirmative defenses to its liability on the policy. The first defense was that the defendant had terminated the policy in question by cancellation as a matter of right under standard provision clause 16 of the policy by written notice mailed to the insured by the agent of the defendant and a written notice mailed to the insured by the defendant itself. The second affirmative defense was that the premiums were paid on the policy to and including April 25, 1945, but not thereafter, and that the policy lapsed for nonpayment of the premiums and was never thereafter reinstated.
The trial court based its judgment on the equitable theory that the defendant could not cancel the policy in question or rescind the contract of insurance without the refund of premiums paid, because of defendant's conduct in waiving late premium payments; and that to hold otherwise would unjustly enrich the defendant.
In the trial of this case, the defendant rested at the close of plaintiff's case without offering any testimony in its behalf. It claimed that under the terms of standard provision clause 16 of the policy the defendant had the right to "cancel this policy at any time by written notice delivered to the insured or mailed to his last address * * *."
In the opinion of this court, there is no evidence in the record of any sufficient notice of cancellation on the part of the defendant. One such claimed notice relied upon is in the letter of Purtill as one of defendant's collecting agents, written to the insured under date of July 9, 1945, in which she says that she is asking the defendant to "not allow your policy to lapse," *Page 319 
and quotes from the defendant's letter to her to the effect that "his policy has lapsed for nonpayment of the premium due in April," and in which she expresses regret that her "explanation of late forwarding was not sufficient to keep Mr. Schwer's policy intact."
The only other notice to the insured relied upon by the defendant as a cancellation of the policy is a letter of W.H. Funke, vice-president of the defendant, to the insured under date of July 29, 1945, in which, he says, in part:
"When you failed to make payment in April and again in May your policy automatically terminated itself for nonpayment of thepremium due May 1. The grace period for that premium expired on May 31. * * * Inasmuch as your policy terminated itself fornonpayment of the next premium due, we regret that we are not in a position to be of further service." (Italics supplied.)
From these letters there was notice of lapse of the policy for nonpayment of premiums but there was no notice of any cancellation of the policy. When it is claimed by an insurer that a policy is terminated by cancellation upon notice under provisions for such cancellation and notice of cancellation, the notice must be specific and clearly show that the policy is being terminated by cancellation as of a date certain. The term "cancellation" imports a termination of the policy while it is still in force, in which event liability will attach under the policy for accidental injury up to the date of cancellation and for a return of the unearned premiums.
To cancel a policy of insurance, an insurer must comply with a requirement of the policy that it give notice of election to cancel. 45 Corpus Juris Secundum, 84, Section 450. And while "in the absence of statutory or contractual provisions as to form, no particular form of notice is necessary, * * * the notice *Page 320 
must be definite and unequivocally show a present cancellation which will take effect at the expiration of the period." 45 Corpus Juris Secundum, 86, Section 450. The notice must leave no doubt as to the effective date of the cancellation.Frontier-Pontiac, Inc., v. Dubuque Fire Marine Ins. Co.
(Tex.Civ.App.), 166 S.W.2d 746. Strict compliance with the provisions for notice is necessary (Gulesian v. Senibaldi,289 Mass. 384, 194 N.E. 119), and it must be definite and certain (Gulesian v. Senibaldi, supra; Joseph, Inc., v. Alberti, Carleton Co., 225 App. Div. 115, 232 N.Y. Supp., 168, affirmed251 N.Y., 580, 168 N.E. 434).
What, under the facts of this case and the terms of this policy, are the rights of the parties, no cancellation of the contract under standard provision clause 16 having taken place? While premium payments were due in advance on the 25th day of each month for the succeeding months, the parties treated the periods as corresponding to the calendar months and the premium payments as becoming due prior to the beginning of each calendar month in advance for the succeeding calendar month, although the payments were generally made late.
The schedule of premium payments made by the insured and the circumstances surrounding the payments, which determined the legal status of the policy and the legal rights of the parties thereto, are as follows:
December 18, 1944 — $12.60 paid for December 1944 and January 1945, grace period expiring March 2, 1945.
February 22, 1945 — $6.30 deducted from a claim payment to the insured to cover February 1945, grace period expiring March 31, 1945.
March 15, 1945 — $12.60 paid for March and April 1945, grace period expiring May 31, 1945.
June 11, 1945 — $12.60 paid by check of insured to Purtill, collecting agent of insurer, for May and June *Page 321 
1945. Purtill forwarded payment by her check to the home office, about June 19, 1945, but the home office refused to accept Purtill's check because too late and returned it to her and she, on July 9, 1945, mailed her check for this amount to the insured with a letter stating that payment was refused because it was overdue and the policy had lapsed for nonpayment of premiums. The insured returned Purtill's check to her. If this payment had been accepted, grace period would have expired July 31, 1945.
July 11, 1945 — check of the insured for $12.60 was sent by him through a friend to the home office direct. The check was returned direct to the insured with a letter stating that policy had "terminated" for non-payment of premiums. If the check had been accepted it would have paid premiums for July and August 1945 and grace period would have expired September 30, 1945. No further payments or effort was made by the insured to keep the policy in force. His accidental death occurred October 10, 1945.
The plaintiff claims that by the insurer's acceptance of overdue payments of premiums, a course of conduct had been established whereby the defendant was estopped to claim a lapse or forfeiture of the policy for late payment of premiums. To support this contention the plaintiff relies upon the doctrine of the case of Union Central Life Ins. Co. v. Pottker, 33 Ohio St. 459, and National Life Ins. Co. of N.Y. v. Tullidge, 39 Ohio St. 240.
The second paragraph of the syllabus in the case last cited is as follows:
"Although a life policy and the renewal receipts may contain a stipulation or notice that agents of the company shall not have authority to waive forfeitures where premiums have not been paid on or before the day designated for their payment, yet the course of business between the agent, the assured, and the company, *Page 322 
in giving effect to payments made when overdue, may be such that the company will be precluded from objecting to a payment tendered when overdue, where no notice had been given the assured that in the future such overdue payments would not be received."
Conceding that such rule applies to the acceptance of overdue payments made by the insured to the defendant in the instant case, the insured was advised on July 9 that such overdue payments would not thereafter be accepted. He failed to make payments or to make tender of payments after July 11, as a result of which his policy automatically lapsed for nonpayment of premiums before his accidental death, a claim for which, under the policy, is the subject of this action.
The next claim of the plaintiff is that even though the policy lapsed for the nonpayment of premiums, nevertheless, under standard provision clause 3, it was reinstated when, on June 11, 1945, Purtill as the insurer's duly authorized agent, accepted the insured's payment of $12.60 representing two months premiums to August 11, and was kept in force by the check of the insured under date of July 11, 1945, from August 11, 1945, to October 11, 1945, the day following the insured's death.
In view of the whole record, this claim is a pure after thought. There is nothing in the record to indicate that the payment made to Purtill on June 11, 1945, was made by the insured to reinstate the policy or that the defendant or Purtill, as its agent, accepted the payment for the purpose of reinstating the policy. In fact, the correspondence between the parties and the testimony in the record is that the payments were made with intent and for the purpose of keeping the original policy alive and in force. There is absolutely no evidence that the payment was accepted for or by the defendant for the purpose of reinstating the *Page 323 
policy, to accomplish which it was necessary that there be a meeting of the minds on that point. The acceptances of premiums to reinstate a policy comprehends both physical receipt and mental assent thereto for the purpose of reinstating the policy. See Taylor v. Mutual Benefit Health Accident Assn.,133 F.2d 279; Massachusetts Protective Assn., Inc., v. Turner,171 Okla. 14, 41 P.2d 689.
Finally, the plaintiff claims that if the policy was not in force at the time of the death of the insured, it was because the defendant had unlawfully refused to recognize the payment by the insured to the defendant's agent, Purtill, of $12.60 on June 11, 1945, as payment to reinstate the policy, and had wrongfully refused to accept the insured's check of $12.60 under date of July 11, 1945, to keep the policy in force, all of which constituted a breach of the terms of the policy on the part of the defendant and entitled the plaintiff, as administratrix of the insured, to recover the amount of the premiums paid on the policy. This claim is predicated upon the doctrine announced inUnion Central Life Ins. Co. v. Pottker, above cited, the fourth paragraph of the syllabus of which is as follows:
"If, in such case, the company wrongfully declares the policy forfeited, and refuses to accept the premium when duly tendered, and to give the insured the customary renewal receipt evidencing the continued life of the policy, the assured is, in equity, entitled to demand a rescission of the contract, and a return of the premiums paid thereon, with interest from the times of payment."
In making this claim, the plaintiff overlooks the fact that the policy under consideration was a monthly term accident insurance policy for a term of one month which automatically terminated at the end of each month unless renewed by the payment of another monthly premium. The consideration for the premium *Page 324 
payable monthly in advance on this policy was fully earned upon the expiration of the succeeding month by the carriage of the risk under the policy for that month. Section (g) of the miscellaneous provisions of the policy reads in part:
"The payments specified in the order for the payment of moneys for this policy are premiums for consecutive months and each shall apply only to its corresponding insurance period."
The breaches of contract, if any, in refusing to receive payment of $12.60 on June 11, 1945, for reinstatement of the policy and the check for $12.60 on July 11, 1945, for the renewal of such policy were breaches, if any, of the monthly contract of insurance in force at the time of such refusals and could not relate to premiums paid on the policy prior to the month in which the alleged breaches, if any, occurred. And, since the defendant returned these payments and check to the insured immediately upon their receipt, there can be no liability for premiums paid on the policy.
Due to the reversal of the judgment of the trial court in this case by the Court of Appeals, many procedural questions are raised and discussed by counsel in their respective briefs, relating to who are proper parties plaintiffs and to whether a law action for the recovery of the face value of the policy or an action in equity to recover premiums as a result of the breach of contract was before the trial court, but owing to the view which this court takes of the whole matter, it will not be necessary to decide those questions.
The judgment of the Court of Appeals is affirmed, except as to the remand to the trial court, and final judgment is rendered for the defendant.
Judgment accordingly. *Page 325 
WEYGANDT, C.J., MATTHIAS, ZIMMERMAN, STEWART and TURNER, JJ., concur.
TAFT, J., concurs in the second sentence of paragraph two of the syllabus, paragraph three of the syllabus, the portion of paragraph four of the syllabus after the word "but," and in the judgment.