MEEKER ET AL., APPELLEES, v. MOTORISTS MUT. INS. CO., APPELLANT.

[Cite as Meeker v. Motorists Mut. Ins. Co. (1972), 29 Ohio App. 2d 49.]

50

(No. 1472—Decided January 12, 1972.)

Messrs. *Cory, Boesel, Leonard & Witter*, for appellant.
Mr. *William C. Vandemark*, for appellees.

GUERNSEY, J.   Effective November 18, 1966, the defendant insurance company, appellant herein, hereinafter referred to as the company, insured one Otto R. Snavely for the period of 12 months (subject to renewal for six month periods) for coverages A (bodily injury liability), B (property damage liability), C (medical payments) and J (protection against uninsured motorists), thereunder. $25.16 of the 12 month premium was then paid by credit from another policy and the remaining $27.84 was by the policy payment plan due and payable on May 11, 1967. The automobile initially insured under the policy was a 1954 Oldsmobile.

In January, 1967, without notifying the company that he had done so, Snavely sold his Oldsmobile and purchased a 1960 Ford. The company did not acquire knowledge of this purchase until about August 3, 1967. Meanwhile, prior to May 11, 1967, the company gave Snavely notice that the due date of the $27.84 premium payment was May 11, 1967, and that, "If not paid, policy lapses 11:59 P. M. S. T. on due date." Snavely did not pay the premium by that date but sent to the company his check in said amount

dated May 25, 1967, which was received by the company on May 29, 1967, and which payment has never been returned.

On July 23, 1967, Snavely had a collision, resulting in judgments for the plaintiffs against Snavely which are the subject of their present action against the company. Pursuant to trial the trial court held for the plaintiffs and against the company. This is the judgment appealed from, the company assigning as error that the judgment is contrary to law and against the manifest weight of the evidence.

In essence, the theory of the company's appeal is that at the time of the collision Snavely had no effective insurance on the 1960 Ford due to his failure to notify the company of his acquisition thereof in place of his 1954 Oldsmobile either before or at the time of his forwarding the $27.84 premium payment.

Determination of this appeal involves the consideration of Insuring Agreement IV, clause a, and General Conditions 22 through 25, reading in pertinent parts as follows:

"a. Automobile. * * * the word 'automobile' means: "* * *

"4. Newly Acquired Automobile—an automobile * * * if (i) it replaces an automobile * * * covered by this policy, or the company insures all automobiles owned by the named insured * * * on the date of its delivery, and (ii) the named insured * * * notifies the company within thirty days following such delivery date; but such notice is not required under coverages A, B, C and J if the newly acquired automobile replaces an owned automobile covered by this policy. * * * No coverage shall apply beyond the date to which premiums are paid. * * *"

"22. Premium Notice. Not less than 10 days prior to the due date of any premium required to continue this policy in effect, a notice of such premium will be mailed to the named insured * * * stating the amount due and the date and hour policy will lapse if such premium is not paid.

"23. Lapse. Failure to pay the premium shown in any premium notice shall be deemed a request by the named

insured for termination of the policy on the lapse date indicated in such notice at 11:59 p. m., standard time, at the address of the named insured.

"24. Reinstatement of Policy. Payment of any past due premium may be considered by the company as an application for reinstatement. The acceptance by the company of a past due premium shall not constitute a waiver of the provisions of this policy with respect to lapse or cancelation. Reinstatement of a lapsed or canceled policy will not be effective until accepted by the company. The company shall not be liable for any occurrences or accidents which take place while the policy is not in effect prior to the date and hour of reinstatement.

"25. Cancelation.

"a. * * * The company may cancel this policy * * * by mailing to the named insured * * * written notice stating when not less than 10 days thereafter such cancelation shall be effective. * * *

"Basis for Cancelation. The company may exercise its right to cancel:

"(1) if the premium for the policy or any instalment thereof is not paid when due, whether payable directly or under any premium finance plan;

"* * * *."

Obviously, since the only coverage which the policy herein afforded was under coverages A, B, C and J, the provisions of Insuring Agreement IV, a, hereinbefore quoted, exempted the insured from any requirement to notify the company at or about the time of the purchase of a newly acquired replacement automobile of such fact. The company would probably concede this and that the policy herein continued to afford coverage until the May 11, 1967, premium payment was not timely made, but contends that the situation created by such failure to pay followed by the later tender of such premium constituted an application for a new contract which required the former insured to make full disclosure of the fact that such application was for coverage incidental to the operation of a 1960 Ford and not incidental to the operation of the 1954 Oldsmobile originally insured effective November 18, 1966.

There is much authority for the proposition that the reinstatement of an automobile liability policy usually constitutes the creation of a new contract requiring a meeting of the minds thereon, although there is minority view to the contrary. The majority view is upheld in Ohio in the case of *Schwer, Admx.,* v. *Benefit Assn. of Ry. Employees, Inc.,* 153 Ohio St. 312. In the circumstances of this case, however, we need not apply either view for reinstatement may occur only in a situation where lapse, forfeiture, termination, or cancelation has already occurred. The distinctions, if any, between these respective terms are not necessarily clear in insurance law and in determining their meaning much depends on the specific terms of the policy which must be construed against the company when it has, as here, prepared and provided the form of the contract, and ambiguities must be resolved in favor of the insured.

Here the basic insurance clause of the contract provides that the insurer's agreements are "in consideration of the payment of the premiums," and Insuring Agreement IV, a, provides that "no coverage shall apply beyond the date to which premiums are paid." On the other hand General Condition 23 provides that "failure to pay the premium shown in any premium notice shall be deemed a *request* by the named insured for termination of the policy on the lapse date indicated," and General Condition 25 state that "the company *may* exercise its right to cancel * * * if the premium for the policy or any installment thereof is not paid when due." (Emphasis added.)

It will be observed that no time element for the payment of premiums is set forth in the basic insurance clause, and no termination or forfeiture is provided for non-payment, so that clause would not preclude coverage when a premium is paid late, as was done here. Similarly, Insuring Agreement IV, a, does not provide for a termination or forfeiture and does not preclude coverage after the late payment of a premium. General Condition 23 with respect to "lapse" does not provide for an automatic lapse but merely prescribes that failure to pay the premium shall be deemed a *request* for termination. Bouvier (Rawl's Third Revision) defines "request" with relation to con-

tracts as being, "a notice of a desire on the part of the person making it, that the other party shall do something in relation to a contract." Thus General Condition 23 contemplates action by the company in compliance with the request before the policy is terminated. This is the only interpretation which is consistent with the quoted provision of General Condition 25 reserving to the company a discretionary right to cancel "if the premium * * * is not, paid when due." Were the policy to automatically terminate under the lapse clause for non-payment of premium there would remain no policy in existence with reference to which the company could exercise its discretionary right to cancel under its cancelation clause.

The insured having, by force of the contractual provision relating to lapse for non-payment of premium, merely made a request to terminate the policy his payment of the premium thereafter, without the company having acted on such request, must be construed as a withdrawal of the request.

We conclude that the policy never lapsed and was never forfeited, canceled or terminated, and, whether or not liability coverage existed during the period of time when the insured was in default for the payment of premium, such coverage did exist after payment was made and at the time of the collision involved in this action.

The trial court did not commit error in its judgment, in the manner assigned, and the judgment must be affirmed.

*Judgment affirmed.*

Younger, P. J., and Cole, J., concur.