CLARKE et al., Appellees,

v.

SMITH et al., Appellees; Heritage Mutual Insurance Company, Appellant.

[Cite as *Clarke v. Smith* (1997), 117 Ohio App.3d 337.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–960083.

Decided Jan. 22, 1997.

338

*Scheper & McGowan* and *James H. Scheper,* for intervening appellee, Seneca Insurance Company.

*Vorys, Sater, Seymour & Pease* and *Nathaniel Lampley, Jr.,* for appellant Heritage Mutual Insurance Company.

---

*Per Curiam.*

On June 22, 1993, plaintiffs-appellees, Kimberly and Daniel Clarke, filed suit against defendants-appellees, Derek and Amber Smith, alleging that on April 7, 1993, Amber Smith had negligently caused a collision between her vehicle and a vehicle operated by Kimberly Clarke. Subsequently, Grange Mutual Insurance Company filed a complaint against the Smiths and others asking the court to declare that it did not owe a defense or indemnity to the Smiths. The trial court granted summary judgment in favor of Grange. On appeal, ·this court affirmed that decision by judgment entry.

Subsequently, the trial court granted leave for the Clarkes' uninsured-motorist carrier, plaintiff-appellee, Seneca Insurance Company, to intervene in the underlying personal injury suit. Naming itself and the Clarkes as plaintiffs, Seneca filed a complaint against the Smiths and defendant-appellant, Heritage Mutual Insurance Company, seeking a declaration that Heritage violated Ohio law by canceling an insurance policy it had issued to the Smiths. The Smiths filed a cross-claim against Heritage also alleging that it had improperly canceled the insurance policy.

Evidence presented at a bench trial showed that in September 1991, the Smiths purchased an automobile insurance policy from Heritage through Elizabeth McKinney, an agent with the K.M. Mitchell Insurance Agency. While the policy was in force, the Smiths made several late premium payments, which, prior to March 1993, Heritage always accepted. When the payments were late, Heritage would send a notice indicating that the policy would be canceled by a certain date. The Smiths then would pay and Heritage would reinstate the policy sometimes with and sometimes without a lapse in coverage.

In January 1993, McKinney left the K.M. Mitchell Agency to go to another agency. Shortly· thereafter, Heritage terminated its relationship with the K.M. Mitchell Agency. The Smiths were not informed of this change.

In March 1993, the Smiths were late in making their premium payment. On or about March 9, 1993, Heritage sent the Smiths a notice of cancellation with a cancellation date of March 23, 1993. Amber Smith claimed that this notice was the same as the notices she had always received when their payment was late. It consisted primarily of a statement of the Smiths' rights to appeal the cancellation.

However, a representative of Heritage testified that its March 9 cancellation notice consisted of two parts, one of which Amber Smith admitted receiving. The other read: "The policy described below will expire on the cancellation date at the time specified in the policy unless payment of the amount past due is received at the company's home office not later than the cancellation date." Amber Smith claimed she did not receive that part of the notice.

On March 22, 1993, the Smiths mailed a check to Heritage. Heritage received the check on March 25 and cashed it. However, on April 1, 1993, the Smiths received a check from Heritage for the amount of the premium with a letter stating that the payment was being returned because the policy had lapsed.

The following day, April 2, 1993, Amber Smith called McKinney. McKinney called Heritage for an explanation and discovered that Heritage would not renew the policy because it had terminated its relationship with the K.M. Mitchell Agency. McKinney advised Amber Smith to cash the check from Heritage and to seek other insurance coverage right away. That same day, McKinney arranged a binder for the Smiths on a new policy with Grange. The issuance of the policy was conditioned upon Grange's receiving the first premium payment in five days. On April 7, Amber Smith was involved in the accident with Kimberly Clarke. On April 8, the first premium payment to Grange was delivered to McKinney's new agency, the day after the expiration of the five-day period.

After hearing the evidence, the trial court held that Heritage did not send the Smiths proper notice of cancellation as required by R.C. 3937.32 and 3937.33. It also held that Heritage had waived its right to cancel the Smiths' policy because it had established a practice of accepting late payments without notifying the Smiths that this practice was no longer in effect. Consequently, the court concluded that the Smiths had a valid policy of insurance with Heritage on the day of the accident. Heritage filed a timely appeal from that judgment.

Heritage presents eight assignments of error for review, which we will address out of order. In its second assignment of error, Heritage states that the trial court erred in finding that it did not comply with the requirements of R.C. 3937.32 by failing to provide notice of cancellation and an explanation of the reasons for cancellation to the Smiths ten days prior to the effective date of cancellation. In its seventh assignment of error, Heritage states that the trial court erred in finding that at no time prior to April 7, 1993, did Heritage offer an explanation as to why it intended to cancel the policy. It argues that the evidence showed that the notice was mailed, that the reasons for the cancellation were included in the mailing, that the policy provides that proof of mailing a notice is proof of notice, and that Amber Smith admitted to receiving the notice. We find these assignments of error to be well taken.

R.C. 3937.31(A) states that an insurance company may not cancel an automobile insurance policy for the first two years after the issuance of the policy except for the reasons stated in the statute, which include "nonpayment of premiums." R.C. 3937.31(A)(3). It further states that no policy may be canceled "except pursuant to the terms of the policy, and in accordance with sections 3937.30 to 3937.39 of the Revised Code."

R.C. 3937.32 provides that cancellation of an automobile insurance policy is not effective "unless it is pursuant to written notice to the insured of cancellation" that contains information specified in the statute. Further, the statute specifically states that where cancellation is for nonpayment of premium, "at least ten days notice from the date of mailing of cancellation accompanied by the reason therefore [*sic* ] shall be given." R.C. 3937.32(E). See *Gast v. W. Am. Ins. Co.* (June 25, 1980), Hamilton App. No. C–790357, unreported, fn. 2.

Pursuant to R.C. 3937.33, "[a]n insurer may cancel an automobile insurance policy at such time prior to its expiration for reasons as may be permitted by section 3937.31 of the Revised Code, by mailing to the insured * * * a notice of cancellation pursuant to section 3937.32 of the Revised Code * * *." By its own terms, this statute requires only the mailing of the notice, not its actual receipt by the insured, to effect cancellation. Consequently, proof of actual receipt is not needed. *Love v. Motorists Mut. Ins. Co.* (1993), 86 Ohio App.3d 394, 402–403, 620 N.E.2d 987, 993. See, also, *DeBose v. Travelers Ins. Cos.* (1983), 6 Ohio St.3d 65, 6 OBR 108, 451 N.E.2d 753, syllabus (to terminate an automobile insurance policy for nonpayment of premiums, the issuer of the policy must *send* a notice of cancellation).

Additionally, the policy issued by Heritage to the Smiths specifically states that "[i]f cancellation is for nonpayment of premium, only ten days notice shall be given. Proof of mailing a notice is proof of notice. Delivery is equivalent to mailing." Thus the policy itself does not require proof of actual receipt. See *Canter v. Christopher* (1992), 80 Ohio App.3d 465, 467, 609 N.E.2d 609, 611.

In the present case, the undisputed evidence showed that Heritage mailed to the Smiths a two-part notice bearing all the information required in R.C. 3937.32. Amber Smith acknowledged receiving at least part of the notice, which specifically stated that it was "additional information." Compare *Canter, supra,* 80 Ohio App.3d at 468–469, 609 N.E.2d at 612; *Nationwide Ins. Co. v. Brown* (May 17, 1990), Franklin App. No. 89AP–1273, unreported, 1990 WL 65655 (insureds received no notice of cancellation and there was an issue of fact whether it was mailed). Thus, the undisputed evidence showed that Heritage complied with the provisions of R.C. 3937.32 by mailing a notice of cancellation and an explanation of the reasons for the cancellation. Seneca argues that

Heritage should have sent all the information on one document. However, the statute does not require that all the specified information appear on one page. *Brown, supra.* Consequently, we hold that the trial court erred in holding that the policy was still effective because Heritage had failed to comply with the provisions of R.C. 3937.32, and we sustain Heritage's second and seventh assignments of error.

■ In its sixth assignment of error, Heritage states that the trial court erred in finding that it waived its right to cancel the Smith policy because it had established a practice of accepting late payments and it had failed to put the Smiths on notice that this practice was no longer in effect. Heritage argues that there is no credible evidence to show that Heritage established a practice of accepting late payments. We find this assignment of error to be well taken, although not for the reason stated by Heritage.

In *Schwer v. Benefit Assn. of Ry. Employees, Inc.* (1950), 153 Ohio St. 312, 41 O.O. 303, 91 N.E.2d 523, paragraph two of the syllabus, the Ohio Supreme Court held:

■ "Although an insurance policy may contain a provision that premium payments thereon must be made on a date certain in advance of the period of coverage or within a stipulated grace period thereafter, a course of conduct between an insured and an insurer or an agent of the insurer, with the latter's acquiescence, in the payment and acceptance of overdue premium payments may be such as to preclude the insurer from refusing to accept a premium payment tendered when overdue. However, where the insurer or its agent notifies such insured that overdue payments will not thereafter be received or accepted, the insured must thereafter comply with the terms of the policy in respect to payment of premiums in order to prevent a lapse of the policy." See, also, *Starcher v. Reserve Ins. Co.* (1980), 68 Ohio App.2d 176, 22 O.O.3d 276, 428 N.E.2d 461; *Wonson v. Gordon Clark Excavating, Inc.* (Sept. 30, 1993), Geauga App. No. 93–G–1756, unreported, 1993 WL 407352.

■ This case differs in one important respect from the cases where this doctrine of waiver or estoppel has been applied. In this case, the insured attempted to obtain other insurance after the Heritage policy was canceled. After receiving a refund of her premium check, Amber Smith contacted McKinney, who arranged for a binder with Grange. An oral binder is a contract for temporary insurance and covers the insured during the time before the actual policy is issued. *Clements v. Ohio State Life Ins. Co.* (1986), 33 Ohio App.3d 80, 85–86, 514 N.E.2d 876, 882; *White v. Nationwide Mut. Fire Ins. Co.* (Nov. 18, 1987), Hamilton App. No. C–870087, unreported, 1987 WL 20163.

In the declaratory judgment action instituted by Grange, the trial court held that the Smiths did not meet the condition precedent for the actual issuance of the policy, timely payment of the first premium, which invalidated the binder. Nevertheless, the Smiths would have been insured under the binder had they fulfilled that condition. We decline to extend the waiver doctrine to cases where the insured knows of the cancellation of the policy and seeks to obtain other insurance after cancellation. To do so would extend indefinitely the liability of an insurer that accepted a few late payments. Consequently, we hold that the trial court erred in finding that Heritage waived its right to cancel the policy for late payment of premiums, and we sustain Heritage's sixth assignment of error.

In its third assignment of error, Heritage states that the trial court erred in finding that Heritage's receipt of a late premium constituted a reinstatement of the policy. It argues that simply because Heritage cashed the Smiths' check after the policy was canceled does not mean it assented to its reinstatement. We do not dispute this contention. See *Schwer, supra,* at paragraph three of the syllabus; *Gast, supra.* However, the trial court did not hold that the policy was reinstated; it held that Heritage waived its right to cancel it in the first place. Consequently, we find no merit to this assignment of error, and we overrule it.

We find the remaining four assignments of error to be moot, and we therefore decline to address them. App.R. 12(A)(1)(c). We reverse the judgment of the trial court in favor of Seneca and the Smiths, and, pursuant to App.R. 12(C), we enter judgment in favor of Heritage.

*Judgment reversed.*

MARIANNA BROWN BETTMAN, P.J., DOAN and HILDEBRANDT, JJ., concur.