Plaintiff-appellant James M. Wygant appeals from the entry of summary judgment in favor of defendant-appellee Continental Insurance Company (CNA).[2] In his sole assignment of error, Wygant argues that that trial court erred in granting summary judgment to CNA.[3] We agree.
 UNDISPUTED FACTS
On September 11, 1996, CNA mailed Wygant a policy cancellation notice, informing him that his insurance would be cancelled effective September 28, 1996, at 12:01 A.M. The notice, which Wygant admitted receiving, stated that "this policy will continue with no loss of protection if $397.75 is received at our office before the date shown above." CNA did not receive payment by that date. On October 11, CNA received a check in the amount of $397.75 from Wygant, which was deposited by CNA in the ordinary course of business.
According to its normal business practice, CNA checks receipts against a file list, and upon a determination that a policy has been cancelled, "the deposit is refunded to the payee, less any amounts owed for the outstanding past due premiums incurred during the period of time that the policy was in effect."[4] Wygant argues that this creates an estoppel. We disagree. Merely depositing a check in the ordinary course of business is not enough to create an estoppel. Schwer v. BenefitAssn. of Railway Employees, Inc.[5]
 DISPUTED FACTS
Hereafter, the stories diverge. According to CNA, upon determining that Wygant's policy had lapsed, it mailed a refund check in the amount of $275.75 to Wygant on October 29, 1996. The insurer retained $122, which it claims represented the amount it was owed through September 28, 1996, the policy cancellation date.[6] In support of its motion for summary judgment and at the hearing on the motion, CNA produced a check register showing a disbursement for $275.75 on October 29, 1996.[7] This check was sent by regular, not certified, mail.
Wygant claims, however, that he never received the October 29, 1996, refund check. Sometime in mid-November of 1996,[8]
Wygant was involved in an automobile accident. He submitted a property-damage claim for $4,773.39 to CNA, which refused coverage because Wygant's policy had lapsed. Wygant alleges that only on March 7, 1997, months after the accident, did he receive the refund of $275.75. He argues that acceptance of his October 11, 1996, late premium payment, with no indication that it had been rejected, created an estoppel as to coverage for the November accident.
According to CNA, in mid-March of 1997, two things happened. It realized that Wygant had never cashed the October 29, 1996, refund check for $275.75. And it also claims that Wygant sent a second check, this time for $275.75, in another belated attempt to reinstate his coverage. On March 7, 1996, CNA issued a second refund check in the amount of $275.75. Wygant responds that he never sent a check for $275.75 in March of 1997 because he did not even know that was the proper amount he owed (the check he sent in October of 1996 was for the full premium of $397.75), and that the March 7, 1997, refund was the only one he received. He also claims he had gotten coverage by then from a different insurer and thus had no need for the CNA policy.
Thus, in sum, Wygant claims that CNA kept his late payment, making no attempt to refund his money until well after his automobile accident. He argues that when CNA kept the late-tendered premium, he had a right to believe his coverage had been reinstated or that CNA was estopped from denying coverage. CNA argues that it promptly refunded Wygant's late premium, that his coverage was clearly over, and that he knew it.
This case presents a classic example of what cannot be resolved by summary judgment: namely, two different versions of a story, with the outcome dependent on credibility. When this happens, as it often does, we have repeatedly advised our trial courts to proceed with a trial, as this kind of case simply cannot be determined by summary judgment, no matter how implausible one story may seem. Johnston v. JC Penney Life Ins.Co.[9] As stated by the supreme court in Turner v. Turner,[10]
 Credibility issues typically arise in summary judgment proceedings when one litigant's statement conflicts with another litigant's statement over a fact to be proved. Since resolution of the factual dispute will depend, at lest in part, upon the credibility of the parties or their witnesses, summary judgment in such a case is inappropriate.
For precisely the foregoing reason, the judgment of the trial court is reversed and this case is remanded for further proceedings.
And the Court, being of the opinion that there were reasonable grounds for this appeal, allows no penalty. It is further Ordered that costs be taxed in compliance with App.R. 24, that a copy of this Memorandum Decision and Judgment Entry shall constitute the mandate, and that said mandate shall be sent to the trial court for execution pursuant to App.R. 27.
Judgment reversed and cause remanded.
HILDEBRANDT, P.J., GORMAN and M.B. BETTMAN, JJ.
To the Clerk:
Enter upon the Journal of the Court on January 22, 1999 per order of the Court _______________________. Presiding Judge
[2] We have sua sponte removed this case from the accelerated calendar.
[3] The trial court actually granted summary judgment to Continental Insurance Agency, the same incorrect party named in the default judgment that was set aside. On remand, the caption should be corrected to reflect the proper parties.
[4] A CNA underwriter described the company's procedure in an affidavit offered in support of summary judgment.
[5] (1950), 153 Ohio St. 312, 91 N.E.2d 523, paragraph three of the syllabus; see, also, Clarke v. Smith (1997), 117 Ohio App.3d 337,343, 690 N.E.2d 604, 608; Gast v. W. Am. Ins. Co.
(June 25, 1980), Hamilton App. No. C-790357, unreported.
[6] Interestingly, neither side raised the legal significance, if any, of CNA keeping a part of the tendered premium ($122) and refunding the rest.
[7] At the hearing on the motion for summary judgment, the trial court permitted some testimony and received some evidence.
[8] At least three different dates for this accident appear in the record. The only significance is that the accident occurred after the policy had lapsed and after Wygant tried to tender a late payment, but before Wygant claims he received his refund.
[9] (Sept. 27, 1995), Hamilton App. No. C-940482, unreported.
[10] (1993), 67 Ohio St.3d 337, 341, 617 N.E.2d 1123, 1127.