DECISION
Defendant-appellant, Grange Mutual Casualty Co. ("Grange"), appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment to plaintiff-appellee, Myrna North, administratrix of the estate of Arthur H. North.
Appellee commenced the present action by bringing a complaint in declaratory judgment seeking a determination that she was entitled to $1 million dollars in uninsured motorist coverage under a policy of insurance issued by appellant Grange.
Grange counterclaimed for declaratory judgment on the basis that the uninsured motorist coverage available to appellee was limited to $100,000 under a written uninsured motorist limits reduction form executed by the decedent's employer, Summit Concrete, Inc.
The material facts of this case are not in dispute. Summit Concrete, Inc. ("Summit") was incorporated as a new business in December 1996, and began operations in March 1997. Summit negotiated for insurance coverage from Grange during the start-up period. On March 17, 1997, insurance agent John Dawson proposed to lower Summit's anticipated premium by reducing uninsured/underinsured motorists coverage limits to $100,000, rather than maintaining the $1 million dollar UM/UIM coverage equivalent to the policy's liability limits. Summit, through its president Anthony Lacko, approved the reduction in UM/UIM limits. Dawson then issued an oral binder of coverage for Summit on March 18, 1997, to preclude a lapse in coverage prior to approval and issuance of the written policy.
Mr. Lacko, on behalf of Summit, executed a written UM/UIM limits reduction form dated March 18, 1997. A written application for insurance was also executed at this time. Both the written UM/UIM limits reduction form and the application were returned to Dawson sometime between March 18 and March 20, 1997. Dawson forwarded the UM/UIM reduction form and insurance application, along with Summit's premium payment, to Grange approximately on March 21, 1997. Grange received the application, UM/UIM reduction form and check on March 24 or 25, 1997.
Grange thereafter accepted Summit's application for insurance and physically issued the policy in question on April 3, 1997. The declaration page of the policy stated liability coverage limits of $1 million dollars and UM/UIM of $100,000. The Declaration Page also stated that the policy became effective at 12:01 a.m. on March 18, 1997.
On March 31, 1997, the decedent, Arthur H. North, was killed in a one vehicle accident while riding as a passenger in a 1997 Ford truck owned by Summit and listed as a covered vehicle under the Grange policy. The accident was caused by the negligence of the driver, fellow Summit employee Kenneth Bevan. It is undisputed that since Bevan and the decedent were co-employees acting within the scope of their employment at the time of their accident, liability insurance coverage under the Grange policy did not apply. It is equally undisputed that, based upon the unavailability of liability coverage, the truck became an uninsured vehicle and the decedent was entitled to uninsured motorist coverage under the policy. The only dispute in the present case is whether the limit of uninsured motorist coverage is in the amount of $100,000 or $1 million dollars. Grange has already tendered its asserted policy limit of $100,000 to appellee.
The trial court considered the matter on cross-motions for summary judgment and found in favor of appellee, holding that, pursuant to the Ohio Supreme Court's decision in Gyori v. JohnstonCoca-Cola Bottling Group, Inc. (1996), 76 Ohio St.3d 565, the reduction in uninsured motorist coverage was ineffective because it had been received after the commencement of the policy year. Grange has timely appealed and brings the following assignment of error:
 THE TRIAL COURT ERRED IN GRANTING PLAINTIFF-APPELLEE'S MOTION FOR SUMMARY JUDGMENT AND IN DENYING DEFENDANT-APPELLANT'S MOTION FOR SUMMARY JUDGMENT.
Initially, we note that this matter was decided on summary judgment. Pursuant to Civ.R. 56(C), a motion for summary judgment shall be granted if no genuine issue of material fact remains to be litigated, the moving party is entitled to a judgment as a matter of law, and the evidence demonstrates that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party opposing the motion. Davis v.Loopco Industries, Inc. (1993), 66 Ohio St.3d 64. An appellate court will independently review the pleadings and evidentiary material submitted to the trial court and apply the same standard to determine whether the materials submitted establish a genuine issue of material fact. Heritage Mutual Ins. Co. v. Ricart Ford
(1995), 105 Ohio App.3d 261. When reviewing the grant of a motion for summary judgment, an appellate court reviews the judgment independently and does not defer to the trial court. Id.; MidwestSpecialties, Inc. v. Firestone Tire Rubber Co. (1988), 42 Ohio App.3d 6. As such, we have the authority to overrule the trial court's judgment if the record does not support any of the grounds raised by the movant, even if the trial court failed to consider those grounds. Bard v. Society Natl. Bank nka Key Bank (Sept. 10, 1998), Franklin App. No. 97AP-1497, unreported (1998 Opinions 4085).
The specific facts before us present a case of first impression in Ohio. At issue is the effect of a written request for a reduction of uninsured motorist coverage which is submitted to the insuror after the issuance of a binder on the policy, but prior to both the accident triggering benefits and the issuance of the definitive policy. The Ohio Supreme Court in Gyori, supra,
held that in order for a rejection or reduction in UM/UIM coverage to be effective, it must be signed by the insured and received by the insuror "prior to the commencement of the policy year." Id. at 569. Gyori, however, presents a significant factual variation from the present case. In Gyori, the plaintiff's claims for UM/UIM coverage with two of his employer's insurers were rejected on the basis that each insurance company believed that the employer had rejected covered UM/UIM coverage prior to the accident. One of the insurers never offered the UM/UIM coverage at all, and, therefore, such coverage was found to exist by operation of law. Gyori, at 568. The other insurer had received a UM/UIM rejection form some two months after the effective date of the policy and one month after the accident. The Supreme Court reasoned that permitting an employer to reject such coverage after the occurrence triggering coverage "would invite fraud and misrepresentation by corporate officers seeking low insurance rates." Id. at 569. Since, in the case before us, the accident occurred after the insured employer submitted the written request to reduce UM/UIM coverage, some of the public policy rationale in Gyori is inapplicable in the present case. Moreover, the definition of the term "policy year," as employed in Gyori, is subject to various interpretation in instances in which issuance of the actual policy is preceded by issuance of an oral binder. Significantly, the policy in Gyori did not involve the issuance of such a binder.
The potential effect of an interim binder predating issuance of the actual policy per se was noted by the Fifth Appellate District of Ohio in Mast v. Progressive Cas. Ins. Co.
(July 7, 1998), Holmes App. No. CA004, unreported. In Mast, the insured obtained an oral binder from his agent on Dec. 22, 1995, and submitted his written application and rejection of UM/UIM coverage on December 28, 1995. The insured sought UM/UIM coverage for an accident occurring on August 16, 1996, well after issuance of the written insurance policy. Because the written policy, as in the case before us, had been back-dated in that the declaration page declared the policy year to begin on December 22, 1995, the date of issuance of the oral binder by the agent, the insured asserted that his subsequent execution on December 28, 1995, of the rejection of UM/UIM coverage did not comply with Gyori. The court noted the most significant distinction from Gyori to be that the rejection had been executed in Mast well before the accident, obviating the potential for fraud which was noted in Gyori. The court in Mast further noted that the issuance of an oral and temporary binder, in order to prevent lapses in coverage, was a standard part of the insurance contract process. Requiring a written rejection of UM/UIM coverage prior to issuance of the oral binder would significantly impede the ability of both insureds and insurers to contract for coverage without sustaining significant gaps in insurance coverage. Id. at 9. The court in Mast also relied on Littell v. Republic-Franklin Ins. Co. (1965), 1 Ohio App.2d 524, for the proposition that, where a temporary binder is issued, the "policy year" commences only upon approval of the insured's written application and the physical issuance of a policy, regardless of whether the policy is back-dated to cover the oral binder period. The court therefore concluded, unlikeGyori, that the written rejection of UM/UIM coverage was effective because it had been received by the insurer prior to approval and issuance of the policy. The court further found that the back-dated policy commencing on the date of issuance of the oral binder was "irrelevant" to the determination of whether the insured had timely rejected UM/UIM coverage, because the policy year for purposes of this determination commenced upon approval of the application. Id. at 7.
Appellant would have us accept Mast for the proposition that any rejection of UM/UIM coverage executed by an insured prior to issuance of the definitive policy of insurance is effective and timely for purposes of compliance with Gyori. We agree that Mast
does acknowledge the practical realities of the insuring process and the common use of oral binders to avoid gaps in coverage. We further agree with Mast's proposition that, if a rejection executed within the time frame of an oral binder were ineffective, it would be nearly impossible for insureds to obtain insurance without incurring gaps in coverage while rejecting or limiting UM/UIM coverage, since insurers would be obligated to ascertain that written rejection of UM/UIM coverage was received prior to receiving an oral binder. Nonetheless, Mast is not on all fours with the facts before us, since the accident in Mast occurred well after issuance of the written policy of insurance, whereas here, the accident occurred during the oral binder period. Furthermore, we note that application of Mast to the present facts allows the insurer to benefit from a logical inconsistency: on the one hand, appellant asserts that, for Gyori purposes of timely rejection of UM/UIM coverage, the "policy year" will not commence until the policy is issued. On the other hand, an accident occurring during the period of the oral binder, pre-dating issuance of the policy, is nonetheless subjected to the lower UM/UIM limits because the insurer asserts that the rejection of UM/UIM coverage "relates back" to the date of the binder. This of course leaves the insurer with the best of both worlds with respect to rejection of UM/UIM coverage.
In light of Gyori, we believe that it is necessary under the current state of UM/UIM insurance law in Ohio to treat such coverage differently during the period of the binder and the permanent policy, thus distinguishing Mast. "A binder is a contract for temporary insurance that covers the insured during the time before the insurer issues an actual policy." (Emphasis sic.) McGuire v. Mills (Aug. 30, 1999), Ross App. No. 98CA2462, unreported, at 20, citing Clarke v. Smith (1997), 117 Ohio App.3d 337,342. "It is generally created for the convenience of an insurance applicant to protect against the risk of loss during the period between completion of the application and the acceptance of the risk by the insurer through issuance of the policy." McGuire,
at 20. The binder may be considered a contract separate from the actual policy intended to provide temporary protection through the insurance application process, investigation of risk by the insurer, and issuance or rejection of the final policy. Id.,
citing Ahern v. Dillenback (1991), 1 Cal.App. 436,1 Cal.Rptr.2d 339.
R.C. 3937.18 requires an offer of UM/UIM coverage with every automobile liability policy issued in Ohio, and absent an express rejection by the insured, coverage in the amount of liability limits will result by operation of law. Gyori, at 567;Abate v. Pioneer Mut. Cas. Co. (1970), 22 Ohio St.2d 161, 163. We presume that the legislature intended such coverage to be offered whether the liability policy in question was an oral binder or subsequent written policy.
Consistent with this view of the binder as a separate contract, ultimately governed by the terms of the subsequently issued policy but independent in other respects, we find that a reduction or elimination of UM/UIM coverage during the binder period, under Gyori, must be effectuated prior to the issuance of the oral binder. We believe that this position can be reconciled with the sound reasons given by the court in Mast for giving effect to a rejection of UM/UIM executed during the binder period but only as a limitation on coverage after the permanent policy is physically issued.
We accordingly find that, in the present case, the written reduction in UM/UIM coverage was executed by Summit after the beginning of the binder period. Although, if we adopt Mast,
such a reduction or rejection would clearly be effective after issuance of the policy, we find that it is ineffective as a reduction of UM/UIM coverage limits during the period covered by the oral binder. By operation of law, therefore, UM/UIM coverage existed under the Grange policy in the full amount of liability coverage, $1 million dollars. The accident giving rise to the uninsured motorist claim having occurred during the binder period, we conclude that appellee was entitled to uninsured motorist coverage in the amount of $1 million dollars, as held by the trial court.
In accordance with the foregoing, appellant's assignment of error is overruled. The grant of summary judgment in favor of appellee by the Franklin County Court of Common Pleas is accordingly affirmed.
Judgment affirmed.
PETREE, J., and LAZARUS, P.J., concur.