## WEST & KNOX TOWNSHIP FARMERS' AID SOCIETY v BURKHART et

Ohio Appeals, 7th Dist, Columbiana Co

Decided November 13, 1931

Brooks & Thompson, East Liverpool, for plaintiff in error.

Hart, Koehler, Blumenstiel & Strong, Alliance, for defendants in error.

ROBERTS, J.

The allegations of the amended petition, as stated uncontradicted, presumably entitled the plaintiff to a recovery. It indicated that an assessment had been made by the insurance company to pay accrued losses, including the loss in question, and that the insured had paid their assessment for that loss. The burden then rested upon the insurance company to make an affirmative defense as against the allegations of the amended petition, and it attempted to do so by a second amended answer, the facts herein stated, so far as the allegations of the petition are concerned, being uncontradicted.

It is alleged in the second amended answer, defendant admits, that on December 17, 1930, it made a further assessment upon its members of twenty-five cents for one hundred dollars of insurance carried, to cover and pay losses that had occurred since making the assessment of August 11, 1930, and that by reason of lack of information on its part and on the part of its officers and directors, and in the honest belief that the plaintiffs had been in good standing when their loss of November 15, 1930, had occurred, by error and mistake it included plaintiffs' said loss in said assessment and in the notice to members to pay the same; and that on January 2, 1931, before defendant or its officers had discovered its error and mistake, plaintiffs paid said assessment of December 17, 1930, to the City Savings Bank & Trust Company, at Alliance, Ohio, as directed in said notice. That when said assessment of December 17, 1930, was made and notices of the same were sent to its members, neither the defendant society nor its officers or board of directors had any knowledge of the fact that when said fire of November 15, 1930, occurred, plaintiffs had been in default for more than fifty days in the payment of the assessment of August 11, 1930, and that plaintiff's said insurance was then void, but at said time honestly believed that when the fire occurred plaintiffs were within their fifty days period of grace; and in including the plaintiff's loss in said assessment and notice and in collecting plaintiff's share thereof through said bank, defendant had no thought or intention whatsoever of thereby waiving either the plaintiff's default in the payment of said assessment of August 11, 1930, or the voiding of plaintiffs' policy by reason of said default; that neither defendant nor its officers nor board of directors became aware of the fact that plaintiffs had been in default and their insurance had been void at the time of said fire, until January 8, 1931, when defendant immediately mailed a check to plaintiffs and to all other members for the amount of said assessment of December 17, 1930.

It thus becomes apparent that the insurance company, practically conceding, that if it made an assessment with which to pay the loss of the burning of the plaintiffs' barn and as a part of said assessment generally assessed the plaintiffs themselves, that it would be, in effect, waving a right to insist upon a forfeiture by reason of the policy not being effective on the fifteenth day of November when the barn

burned, because at that time the previous assessment had not been paid which reinstated the plaintiffs and was not paid until five days thereafter.

Perhaps the first proposition for consideration is, what constitutes a waiver.

Counsel for the insurance company cite 115 Oh St 598, which is the case of **Michigan Automobile Insurance Company v Van Buskirk.** In the syllabus it is said:

"Waiver consists in the relinquishment of a known right. A party cannot be deemed to have waived a right based upon material facts, the existence of which he did not know."

"An insurance policy was issued insuring an automobile against loss or damage arising from collision. It contained a provision that the policy should be void if the automobile be 'incumbered by any lien or mortgage without the assured having given immediate written notice of such incumbrance.' At the time of issuance there was an existing chattel mortgage on the automobile, which fact neither the company nor its agent knew.

"HELD: The mortgage lien was material to the risk and so made by the policy contract, and, in the absence of knowledge thereof on the part of the company or its agent, there was no waiver of the provision relating to said incumbrance."

It is apparent that the situation in the case from which this quotation has just been made, was materially different from the relation of the parties in the case under consideration. In this automobile case the policy was to be void if there was an incumbrance on the automobile. The insurance company had no knowledge,—could have no knowledge of the fact that there was an incumbrance on it, and therefore there was not a relinquishment of a known right. But here we have the situation of an insurance company doing a regular business as a corporation by and through its officers and representatives, acting within the scope of their employment and legally authorized in their scheme of doing business. It is clearly indicated, we think, by the allegations of the second amended answer which is under construction, that it had a system of books. It knew the name and residence of every person insured, the amount of its insurance, the date when the policies became effective, and when they would terminate. It knew of losses which occurred; it had a record of them. And then, from time to time, taking into considera-

tion all of its insurance and the amount of the losses, it figured out the amount of an assessment to be made, and had a record of the notices sent out of such assessment, and a record within the knowledge and under the control of at least some of its representatives for which it was responsible, of the responses in payments made to those assessments. This assessment was paid to the Alliance Bank, but that was an authorized place to make payments. And the bank may certainly be assumed to know when payments were made, and know, as a matter of fact, if they had not been made; and the knowledge of this depository bank for the payment of dues was the knowledge of the corporation itself. In a partnership the knowledge of one partner is the knowledge of the partners. In a corporation presumably all of the officials, and certainly all of the stockholders, do not know precisely what has occurred in different departments of that corporation in the operation of its business. But that which occurs in the course of business, and is the knowledge of one person duly authorized to look after and take care of that business, is the knowledge of the corporation, which is a corporate entity. So that it is not apparent, taking into consideration the admitted facts in this case, the allegations of the second amended answer, the known undisputed method of doing business, that this corporation could have been ignorant of the fact that this assessment had not been paid. It is said that they were ignorant of it; that they made the assessment not knowing. A person or a corporation is charged with what they know and not what they do not remember. That is, if a person knows a certain thing, he is not excused by doing a wrongful thing and saying, "I forgot it." These matters for which this corporation, or perhaps we might say, individuals, generally are responsible, are not dependent upon or excusable because at the precise moment they may not have been mindful of the knowledge, but having acquired that knowledge, they cannot dispute but what they knew of it, and forgetfulness will not excuse. It is said, however, that this case was disposed of by a demurrer to the second amended answer, and that thereby the allegations of that pleading must be taken to be true. And it is alleged also that not being mindful or having no knowledge of the fact that the payment had not been made, that they are not liable. So that there was no forfeiture.

But these are largely merely conclusions and not allegations of fact, and therefore

are not important. But even if the allegations be broad enough, in express language, to deny knowledge,—taking the whole pleading into consideration, its admissions, the conceded manner of doing business, it must have been within the knowledge of this corporation, to its agents and representatives and officers, that when this payment of assessment was made, that it was after a delinquency had occurred for more than fifty days, and therefore, the insurance was suspended or held in abeyance until the payment was made, and the barn having burned before the payment was made, it is claimed that there was no liability for the loss on the barn. We think that this contention so far as being unmindful of the fact that, at the time of making a mistake in sending out this assessment, does not protect the insurance company, and that it was, as a matter of law, the relinquishment of a known right, one which presumably they say they had forgotten about at the time, but, nevertheless, chargeable with knowledge of.

There is another proposition which has interested this court. Counsel for the defendants in error place great reliance upon a recent Supreme Court decision; that of **Shields et v Supreme Council of Royal Arcanum, 123 Oh St 131**, which is presumably a leading authority now in this state upon matters involved in that case. Briefly stated, Shields was a member of this Mutual Benefit Society. He died on December 21, 1925. He had been insured in this Royal Arcanum for many years, and it was the custom of some local representative of the company to send monthly notices to the insured that dues should be paid. These assessments on Mr. Shields were being cared for by his daughter, a woman by the name of Mrs. Blanding, and the assessment for November, 1925, was not paid, she having failed to receive any notice. But on December 15, the company wrote her as follows:

"According to my records assessment No. —— for the month of —— has not been paid. Will you kindly give this matter your prompt attention and notify me of any errors or omissions in your account."

Mrs. Blanding promptly thereafter paid the assessment, and a few days later the beneficiary died, and the question was involved as to whether the failure to pay the November installment was important, or whether the letter written by the company and the subsequent acceptance of it, was a waiver of right of forfeiture by reason of the non-payment, and the Supreme Court held that it was. That would be good authority for this case, except for this one proposition. The indemnity became due in the Shields case a few days after this remittance of dues was made. In the instant case the payment was not made until after the loss had accrued. The barn had been burned. The question then is, as to what extent the insurers had been prejudiced by their default in making the payment. Upon this proposition I read briefly from 3 Thompson on Corporations, 1783. I read this authority, however, upon the proposition previously considered, which I omitted, as to what constituted knowledge of the company, and when a relinquishment of a known right becomes a waiver.

"The circumstances which put a corporation upon inquiry as to the rights or equities of a third person must be the same as those which will put an individual upon inquiry; otherwise, the public would be at an enormous disadvantage, not only in dealing with corporations themselves, but in having their rights destroyed where others who are the trustees of such rights deal with corporations. The corporation will be charged with notice of matters affecting the corporation where its officers have knowledge of facts which would put a prudent person on inquiry that would lead to this knowledge.

"The law will also impute to a corporation knowledge of facts which its directors ought to know, in the exercise of ordinary diligence in the discharge of their official duties, when the imputation of such knowledge to the corporation is necessary to protect the rights of third persons. The directors are presumed to know that which it is their duty to know and which they have the means of knowing."

To the same effect, 32 Corpus Juris, 1322, and 71 Iowa 689, 11 O.C.C., 131. And I might say that among other authorities have been cited and quoted in briefs, not all of which have been examined, but we apprehend that there is no question upon that proposition.

Proceeding back, now, to the other question, where the conditions involved are such that the payment was made after the loss had occurred, as is the fact in this case. Reading from Cyclopedia of Insurance Law, Couch, Volume 3, §691, page 2291·

"So where a premium is accepted after the loss of the property with · knowledge of the loss, there is a waiver of default for non-payment. And if under, a policy of insurance providing that the company is not liable for any loss occurring while any part of the premiums are overdue and unpaid, the company, with knowledge of the loss, accepts a premium overdue, it thereby waives the forfeiture and restores the policy to its full force not only as to the future, but also from the beginning."

Referring now to 38 NE, 714, case of Continental Insurance Company of New York v Chew, it is said in the syllabus,

"Acceptance of a premium by an insurance company after knowledge of a loss occurring while the premium was in default waives the forfeiture, and does not merely revive the policy as to the future."

Citing now the 105 Pacific, page 198, St. Paul Fire and Marine Insurance Company v Cooper, syllabus:

"One of the conditions of a fire insurance policy was that, in case of default in the payment of any note given for premiums the company should not be liable for any loss occurring to the property mentioned therein during the continuance of such default. **Held,** there being a breach of such condition, the company may waive the forfeiture by acts from which an intention so to do may be fairly inferred. **Held,** further, that the acceptance of the cash premium by the general agents of the company after default and notice of loss, operates as a waiver of the forfeiture and renders the company liable on the policy from its inception as though the premium notes had been paid when due."

Without taking the time to cite further, see also 35 Northwestern, 633.

We reach the conclusion that it is not important that the loss had occurred before the acceptance of the payment; and,—therefore find that there was a waiver under the definition, of the relinquishment of a known right, because the insurance company necessarily did know, in its organization, of the important conditions, we reach the conclusion that the judgment of the Court of Common Pleas should be affirmed, in which court it was held that the plaintiffs were entitled to recover.

POLLOCK and FARR, JJ, concur.