Weygandt, C. J.
 

 The first of the two questions of law here presented relates to the status of the plaintiff after December 15, 1932. This requires a study of the company constitution and by-laws which appear in the policy then held by the plaintiff.
 

 Article IX, Section 5 of the constitution contains the following provision:
 

 “All property insured shall be re-appraised and revalued every eight years, and a new policy issued in accordance with such re-appraisement or revaluation, unless membership is terminated by death, sale or change of ownership or title to such property, withdrawal or delinquency of member.”
 

 The following language is found in Article X, Section
 
 4
 
 of the Constitution:
 

 “Refusal o,r neglect to pay the necessary assessments will cause a forfeiture of protection by this Company.”
 

 
 *387
 
 Article XII, Section 2 of the constitution reads as follows:
 

 “Should any member fail to pay any assessment within thirty’ days of such notice, such member shall be deemed delinquent and his or her policy shall be suspended and shall have no protection during such delinquency; also, a penalty of 25 per cent of this assessment shall be added thereto, and the Secretary-Treasurer shall forthwith notify them by return envelope of their delinquency and the penalty assessed against them, and if same is not paid within thirty days of such second notice, said delinquent assessment and penalty will be collected by legal process.”
 

 Article II, Section 4 of the by-laws contains the following provision:
 

 “Loss sustained after a member becomes delinquent will not be paid either in whole or in part.”
 

 According to the undisputed facts the delinquent assessment which unfortunately furnishes the storm center about which this controversy rages, was duly levied for the purpose of covering the expenses and losses experienced by the defendant company during the year ending October 15, 1932, and proper notice thereof was given to each member of the company under date of November 15,1932. Payment was clearly required within thirty days. However, December 15, 1932, passed without further incident except the receipt immediately thereafter of a second notice from the defendant to the effect that the plaintiff was delinquent, that by reason thereof a penalty of twenty-five per cent had been added to his assessment, and that court action would be instituted and the policy cancelled unless payment were made within a further period of ten [sic] days. What was then the status of the plaintiff? He vigorously contends that his policy remained in full force and effect inasmuch as it contains no cancellation clause as did his first policy, and
 
 *388
 
 the defendant declared no forfeiture. However, the mere absence of these can hardly be said to outweigh such clear and unambiguous language as that quoted above. From the very words themselves it is plain that when the plaintiff failed to pay his assessment within the first period of thirty days he thereby immediately became “delinquent.” As a result of this he subjected himself to a penalty of twenty-five per cent, his policy was “suspended,” and he
 
 ipso facto
 
 lost his “protection during such delinquency.” Thus, under the terms of this policy there can be no recovery by the plaintiff in the absence of subsequent modifying circumstances.
 

 The second question of law relates to the legal significance of the defendant’s conduct in accepting from the plaintiff the amount of the delinquent assessment and penalty on the day of the fire with full knowledge of the loss that had just occurred.
 

 Again the facts are not in dispute. The fire occurred at approximately one a. m. on December 29,. 1932. This was fourteen days after the plaintiff had become delinquent, his policy suspended and his protection lost. He at once notified the defendant whose adjuster thereupon went to the premises and ascertained the amount of the loss. Later in the day the defendant accepted from the plaintiff the amount of the delinquent assessment and penalty, and also reinstated the plaintiff by giving him protection on his undestroyed property beginning at noon of that day.
 

 Was this action on the part of the defendant inconsistent with its present attitude? Under the terms of his policy the plaintiff owed his assessment irrespective of whether he continued his membership in the defendant company after October 15, 1932, because, as already observed, this assessment was levied by reason of the protection given the plaintiff during the year ending on that date. Therefore, when he paid
 
 *389
 
 the assessment on December 29, 1932, he met simply an unconditional and overdue obligation upon which he could have been sued by the defendant. In fact, it is readily apparent that the collection of the plaintiff’s assessment was a part of this mutual company’s duty toward its other members.
 

 Likewise, it is difficult to discover wherein the giving of future protection to the plaintiff was inconsistent with the defendant’s adherence to the provisions of the policy relating to delinquency, suspension and loss of protection.. It should be noted that the plaintiff paid no assessment covering losses sustained during the period of his delinquency and suspension.
 

 Finally, was there inconsistent conduct tantamount to a waiver when the defendant’s adjuster went to the plaintiff’s premises and ascertained the amount of the loss ? It is sufficient to observe that the plaintiff makes no claim of any statement or promise at that time on the part of the defendant relating to the payment of the loss sustained.
 

 The foregoing reasoning requires an affirmance of the judgment of the Court of Appeals.
 

 Judgment affirmed.
 

 Stephenson, Williams, Jones, Matthias, Day and Zimmerman, JJ., concur.