STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

v.

INGLE, Appellant;

Farmers Insurance Group, Appellee.

[Cite as *State Farm Mut. Auto. Ins. Co. v. Ingle*, 180 Ohio App.3d 201, 2008-Ohio-6726.]

Court of Appeals of Ohio,
Second District, Miami County.

No. 2008 CA 13.

Decided Dec. 19, 2008.

Alfred J. Weisbrod, for appellant.

Joseph V. Erwin, for appellee.

_____

WOLFF, Presiding Judge.

{¶ 1} James Ingle appeals from an order of the Miami County Court of Common Pleas, which declared that Ingle did not have coverage under a policy issued by Farmers Insurance of Columbus, Inc., for an automobile accident that occurred on December 14, 2004. Ingle raises one assignment of error on appeal, arguing that the trial court erred in finding that Farmers had not waived his late premium payment and in concluding that his policy was out of force at the time of the accident. For the following reasons, we affirm the trial court's judgment.

I

{¶ 2} On December 14, 2004, Ingle was involved in an automobile accident with Jeffrey Dross. A day or two after the accident, Ingle contacted his Farmers insurance agent, William Krauss, to report the claim. On December 20, 2004, Ingle received a letter from Farmers asking him to participate with the company

in resolving the claim. Ingle's claim was ultimately denied on the ground that his policy was not in force on the date of the accident.

{¶ 3} In July 2005, Dross brought suit against Ingle in the Miami County Municipal Court under case No. 2005 CVE 1603, alleging that Ingle's negligence had caused the automobile accident and seeking damages. Ingle filed a third-party complaint against Farmers, seeking a declaratory judgment that he was covered by a policy of insurance with Farmers at the time of the accident. Farmers counterclaimed and requested a declaratory judgment that the policy did not require the company to defend, indemnify, or provide coverage to Ingle for the accident.

{¶ 4} In December 2006, State Farm Mutual Automobile Insurance Company, Dross's automobile insurer, filed suit against Ingle in Licking County, Ohio, under case No. 06 CV 1863 JRS. The case was transferred to the Miami County Court of Common Pleas as case No. CV 07–106, and the parties sought consolidation of the common pleas and municipal court cases. In April 2007, the municipal court case was transferred to the court of common pleas under case No. CV 07–354, and the two cases were consolidated.

{¶ 5} On November 8, 2007, the court held a trial on Ingle's and Farmers' declaratory-judgment claims. After posttrial briefing, the trial court made the following findings of fact, which we find are supported by the record.

{¶ 6} "1) Defendant Ingle received a renewal notice from Defendant Farmers for his auto insurance policy but did not pay it immediately. See Exhibit 2.

{¶ 7} "2) Defendant Ingle received a cancellation notice from Defendant Farmers that his insurance would be cancelled unless he paid the premium of $372.40 by December 7, 2004. See Exhibit 3.

{¶ 8} "3) Defendant Ingle had been insured by [Farmers] for over twenty years but his policy had been cancelled in the past due to the lack of timely premium payments. See Exhibit F.

{¶ 9} "4) The cancellation note received by Defendant Ingle gave him the option of dropping off the payment at his agent's office in Troy or mailing it to Kansas. The Defendant elected to mail in the premium. See Exhibit 3.

{¶ 10} "5) On December 2, 2004 Defendant Ingle wrote a check for $372.40 and placed the check in the mail the same day. See Exhibit D.

{¶ 11} "6) On December 14, 2004, Defendant Ingle was involved in an automobile accident.

{¶ 12} "7) The Defendant's check for $372.40 was not received in [Farmers'] Shawnee Mission, Kansas office until December 20, 2004, and cleared the Defendant's bank on December 22, 2004.

{¶ 13} "8) [Farmers] reissued the Defendant's insurance policy effective December 20, 2004, the date they received his check."

{¶ 14} Upon considering the facts, the trial court concluded that the cancellation notice to Ingle placed the burden on him to ensure that Farmers received the premium payment prior to the cancellation date, and the mailbox rule was inapplicable. The court further stated that "[t]here also is no waiver under the facts of this case." The court noted that Krauss had denied that he had told Ingle that he would be covered for the accident, there was no evidence of chicanery to avoid Ingle's claim, and there was no evidence that Farmers' acceptance of the late premium constituted an implicit acceptance of responsibility for providing coverage for the accident. The trial court thus agreed with Farmers that the policy was out of force at the time of the accident due to Farmers' not having timely received the premium due, and it granted judgment to Farmers on its declaratory-judgment action.

{¶ 15} The court subsequently found that Ingle was liable to State Farm for $17,886.67 plus interest and court costs in case No. 07–106 and to Dross for $1,277.50 plus interest and court costs in case No. 07–354.

## II

{¶ 16} Ingle's sole assignment of error is as follows:

{¶ 17} "The trial court erred when it found that the defendant-appellant James Ingle did not have automobile liability insurance coverage with defendant-appellee Farmers Insurance Group on December 14, 2004, the date of the accident herein even though James Ingle had submitted payment of the premium due for the time in question and after becoming aware of the Ingle claim, Farmers cashed the premium check and deposited the check to its account."

{¶ 18} In his assignment of error, Ingle claims that Farmers waived timely payment of the premium by accepting the premium payment on December 20, 2004. Upon review of the record, we find no fault with the trial court's conclusion that Farmers did not waive timely payment by accepting Ingle's check after the accident.

{¶ 19} R.C. 3937.31(A) requires all automobile insurance policies to be issued for a period of not less than two years or guaranteed renewable for successive policy periods totaling not less than two years. Where renewability is mandatory, as was the case with Ingle's policy, the refusal to renew a policy is treated as a cancellation. Id. Nonpayment of premium is grounds for the cancellation of a policy. R.C. 3937.31(A)(3).

{¶ 20} In order for an insurer to cancel an auto insurance policy, the insurer must provide written notice of cancellation to the insured. R.C. 3937.32. The

notice must include, among other things, the policy number, the date of the notice, and the effective date of the cancellation. Id. "Where cancellation is for nonpayment of premium[,] at least ten days notice from the date of mailing of cancellation accompanied by the reason therefor[ ] shall be given." R.C. 3937.32(E).

{¶ 21} In addition to the cancellation requirements set forth by the General Assembly, the cancellation must also comport with the terms of the policy. R.C. 3937.31(A). In general, the policy "is cancelled on the effective date stated in the notice of cancellation." R.C. 3937.33.

{¶ 22} Consistent with the statutory requirements, paragraph 8(a)(3)(a) of Part V of Ingle's policy with Farmers provided:

{¶ 23} "(3) When this policy is in effect 90 days or more or is a renewal, we may cancel only for one or more of the following reasons:

{¶ 24} "(a) Nonpayment of premium. If we cancel for this reason, we will mail you at least 10 days notice."

{¶ 25} Paragraph 8(c) further indicated that the policy would terminate automatically at the end of the policy period if the insured did not accept Farmers' offer to renew. An insured's failure to pay the required renewal premium would mean that the insured declined the offer to renew.

{¶ 26} Farmers sent a renewal premium notice to Ingle, indicating that the policy would renew on November 20, 2004, and showing a premium due of $372.40. Ingle admitted that he did not pay the invoice immediately. On November 23, 2004, Farmers sent an "avoid cancellation notice," which stated that the payment required to keep the policy in force had not been received. The notice indicated that the policy would be cancelled effective at noon on December 7, 2004 (the cancellation date), if full payment was not received in the company offices or by an authorized sales representative before that date. Although Ingle wrote a check on December 2, the check was not received by Farmers until December 20, 2004.

{¶ 27} On December 15, 2004, Farmers sent a notice to Ingle indicating that the policy had been cancelled on December 7, 2004, and seeking payment of $33.53 for the time period that the policy had been in force between November 20 and December 7, 2004. The notice further stated, "This is a reminder that your policy was canceled for non-payment on the cancellation date shown above as reflected by the prior cancellation notice mailed to you. If you would like to reinstate this policy we suggest that you send the full amount of the premium payment now. You will be informed whether your policy has been reinstated, and if so, the exact date and time of reinstatement." Farmers' documentation

indicates that Ingle's policy was reinstated effective December 20, 2004, when it received Ingle's premium payment.

{¶ 28} Ingle claims that Farmers' acceptance of his late premium payment after being informed of the accident and the resulting loss constituted a waiver of its right to cancel his policy. He argues: "It has been the law of Ohio forever that acceptance of a premium by an insurance company **after knowledge of a loss** occurring while premium was in default waives forfeiture, and does not merely revive the policy as to the future." (Boldface sic.)

{¶ 29} Farmers responds that this case is governed by R.C. 3937.31(D), which states: "Renewal of a policy does not constitute a waiver or estoppel with respect to grounds for cancellation that existed before the effective date of such renewal." Farmers further claims that the evidence indicates that the company did not waive Ingle's nonpayment.

{¶ 30} As an initial matter, we disagree with Farmers that R.C. 3937.31(D) is dispositive. R.C. 3937.31(D) concerns renewals, not reinstatements after cancellation.

{¶ 31} As for Ingle's argument, Ingle overstates the Ohio case law in his favor. The Supreme Court of Ohio has stated that when an insurance policy provides that acceptance of a delinquent payment will reinstate the policy, the acceptance of the late premium creates a new contract and does not revive the original policy. *Schwer v. Benefit Assn. of Ry. Emps.* (1950), 153 Ohio St. 312, 41 O.O. 303, 91 N.E.2d 523, paragraph three of the syllabus. "[T]o effectuate such reinstatement of the insurance contract it must be shown that the receipt of the payment was knowingly accepted by the insurer or its agent for the purpose of reinstatement of the policy and not as a payment of overdue premiums on the original contract of insurance." Id.; see also *Morey v. Educator & Executive Insurers, Inc.* (1976), 45 Ohio St.2d 196, 74 O.O.2d 305, 342 N.E.2d 691 (noting that payment of delinquent premium did not reinstate coverage retroactively), overruled on other grounds by *DeBose v. Travelers Ins. Cos.* (1983), 6 Ohio St.3d 65, 6 OBR 108, 451 N.E.2d 753.

{¶ 32} In determining whether an insurer's acceptance of late premiums results in continued coverage without interruption, the issue is whether the insurer's acts are consistent with a theory of waiver or estoppel. *Starcher v. Res. Ins. Co.* (1980), 68 Ohio App.2d 176, 179, 22 O.O.3d 276, 428 N.E.2d 461. "Waiver is mainly, or essentially, a matter of intention. Thus, a prerequisite ingredient of the waiver of a right or privilege consists of an intention to relinquish it. Indeed, the essence of a waiver, as indicated by the definition, is the voluntary and intentional relinquishment of a known right, claim, or privilege. Whether an alleged waiver is express or implied, it must be intentional. Mere negligence,

oversight, or thoughtlessness does not create a waiver." *Hicks v. Estate of Mulvaney,* Montgomery App. No. 22721, 2008-Ohio-4391, 2008 WL 3990811, ¶ 13, quoting *Russell v. Dayton* (May 18, 1984), Montgomery App. No. 8520, 1984 WL 4896, at *3. "By contrast, the doctrine of equitable estoppel precludes a party from asserting certain facts where the party, by his conduct, has induced another to change his position in good faith reliance upon the party's conduct." *Turner Liquidating Co. v. St. Paul Surplus Lines Ins. Co.* (1994), 93 Ohio App.3d 292, 295, 638 N.E.2d 174.

{¶ 33} As noted by Ingle, in cases where a loss has occurred prior to acceptance of the late payment, the insurer must have knowledge of the prior loss in order to apply the doctrine of waiver. See *Miraldi v. Life Ins. Co. of Virginia* (1971), 48 Ohio App.2d 278, 2 O.O.3d 235, 356 N.E.2d 1234. However, acceptance of a late payment after loss does not, by itself, result in waiver. Id.; *Permanent Gen. Ins. Co. v. Bedwell* (2001), 111 Ohio Misc.2d 8, 13, 747 N.E.2d 333 (the depositing of a check in the ordinary course of business does not, by itself, result in waiver). Rather, the conduct of the insurer must indicate that it intended to waive the lateness of the payment. Such conduct might include retention of the portion of the premium for the period of time that the policy had been cancelled. Cf. *Vaughn v. State Farm Ins. Co.* (1979), Lucas App. No. L–78–145, 1979 WL 207023 (no waiver where insurer specifically excluded and refunded to the insured the amount of the overdue premium that would be used to cover the time period when the policy had been cancelled); *Petersilge v. Crawford Cty. Farmers Mut. Fire Ins. Co.* (1936), 130 Ohio St. 385, 4 O.O. 521, 199 N.E. 845.

{¶ 34} The insurer also may forego its right to cancel the contract when it misleads the insured into believing that he will have coverage for an accident by belatedly paying his premium. See *Messerly v. State Farm Fire & Cas. Co.* (1995), 69 Ohio Misc.2d 10, 647 N.E.2d 890. Although some courts have considered whether the insurer sought cooperation from the insured regarding the claim, the supreme court concluded in *Petersilge* that an insurer's conduct did not constitute waiver when an adjuster went to the insured's premises and ascertained the amount of loss but the adjuster made no statement or promise relating to payment for the loss. *Petersilge,* 130 Ohio St. at 389, 4 O.O. 521, 199 N.E. 845; see also *Gologram v. West & Knox Mut. Ins. Co.* (1987), Columbiana App. No. 86–C–43, 1987 WL 12889.

{¶ 35} Insurers may also be precluded from cancelling a policy due to untimely payment of premiums when the parties had established a course of conduct that late payments would be accepted without causing a lapse in coverage. *Schwer,* 153 Ohio St. 312, 41 O.O. 303, 91 N.E.2d 523, at paragraph two of the syllabus; *Clarke v. Smith* (1997), 117 Ohio App.3d 337, 690 N.E.2d 604.

{¶ 36} In his reply brief, Ingle relies upon *West & Knox Twp. Farmers' Aid Soc. v. Burkhart* (1931), 13 Ohio Law Abs. 385, in which the Seventh District held that a mutual aid fire insurer waived the forfeiture of the insured's policy for nonpayment when it accepted a delinquent premium payment after a loss, with knowledge of the loss, and used the loss as a basis for calculating future premiums. In *Gologram,* the Seventh District distinguished *Burkhart,* indicating that the critical fact in *Burkhart* was that the mutual aid insurer had included the fire loss at issue when it made further assessments. *Gologram,* Columbiana App. No. 86–C–43, 1987 WL 12889. Because the mutual aid insurer in *Gologram* had not included the charge for the fire when it made further assessments, the *Gologram* court found that no waiver had occurred.

{¶ 37} With these standards in mind, we find no error in the trial court's conclusion that Farmers did not waive its right to cancel the policy due to Ingle's failure to timely pay his premium. Farmers' notices to Ingle indicated that the company would cancel his policy if the premium was not paid by the cancellation date of December 7, 2004. The December 15, 2004 notice informed Ingle that his policy had been cancelled, and it indicated that the policy could be "reinstated" at a date and time to be determined by Farmers.

{¶ 38} When Ingle's policy had been cancelled in the past due to nonpayment of premiums, the policy was reinstated as of the date of the late payment. The premium payment was not applied retroactively to avoid a gap in coverage. Instead, the reinstatement date began a new six-month policy term.

{¶ 39} Consistent with this past approach, the policy issued after Farmers received the late premium payment on December 20, 2004, showed an effective date of December 20, 2004. The new declarations page indicated that $33.53 had been applied to the balance due for the cancellation grace period (the period between November 20 and December 7, 2004). The remaining premium was applied for the period of December 20, 2004, through June 2, 2005. The June 2, 2005 renewal date reflects a six-month period ending June 20, 2005, minus the number of days charged for the grace period. The record thus indicates that Farmers did not apply any of the late premium payment to the period of time between December 7, 2004, and December 20, 2004.

{¶ 40} Nancy Simpson, policy resolution specialist for Farmers, testified that Ingle's December 2004 payment was sent to a "zoned remittance center" in Overland Park, Kansas. The center's sole function is to enter payments in the computer system and deposit the checks. Ingle's check was cashed in the ordinary course of business. The billing department did not determine Ingle's coverage, and it was not involved in the processing of Ingle's accident claim.

{¶ 41} Ingle reported his claim to Krauss within a few days of the accident. Although Ingle testified that Krauss had told him that he was "covered through

the accident," Krauss denied making that statement, and the trial court credited Krauss's testimony. Krauss further testified that he would not check to see whether the policy was cancelled before filing a claim. He stated that his responsibility "is to file an insurance claim regardless of the policy status. * * * I don't have the authority to determine if a claim will be paid or not paid. It's my responsibility * * * if a customer requests a claim be filed we file it."

{¶ 42} Ingle presented correspondence from Claims Representative Jarrod Mount, which stated that Farmers had been unable to contact Ingle regarding the accident and asked Ingle to complete and return an application-of-benefits form and to contact Mount directly. Although this documentation arguably could suggest that Farmers was processing his claim under his policy, it is more reasonably construed as indicating that Farmers' claim department was merely conducting an initial good-faith review of the claim. Farmers' claim department ultimately denied Ingle's claim because his policy had lapsed.

{¶ 43} Upon review of the record, the record amply supports the trial court's conclusion that Farmers did not waive its right to cancel Ingle's policy due to nonpayment of premiums, even though it accepted Ingle's late premium payment with knowledge of a loss. Because the record indicates that Ingle's policy was cancelled on December 7, 2004, and was reinstated on December 20, 2004, the trial court properly concluded that Ingle's policy was not in force at the time of the accident on December 14, 2004.

{¶ 44} The assignment of error is overruled.

### III

{¶ 45} Having overruled the assignment of error, we will affirm the judgment of the trial court.

Judgment affirmed.

FAIN and DONOVAN, JJ., concur.