[Cite as *Kreis v. Dollings*, 2025-Ohio-1329.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| DUSTIN MATTHEW KREIS | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellant | : | Hon. Robert G. Montgomery, J. |
| | : | Hon. David M. Gormley, J. |
| -vs- | : | |
| | : | |
| CAITLIN REBECCA DOLLINGS | : | Case Nos. CT2024-0135 |
| | : | CT2024-0136 |
| Defendant - Appellee | : | |
| | | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Muskingum County Court of Common Pleas, Domestic Relations Division, Case Nos. DE2022-0523 and DE2024-0449

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      April 14, 2025

APPEARANCES:

For Plaintiff-Appellant

Brian W. Benbow
803 Taylor Street
Zanesville, Ohio 43701

*Gormley, J.*

**{¶1}** Plaintiff Dustin Matthew Kreis appeals the judgment of the Domestic Relations Division of the Muskingum County Court of Common Pleas. That court, in response to a request from defendant Caitlin Rebecca Dollings, disqualified attorney Brian Benbow from representing Kreis in two cases involving the custody of Dollings's two children because Attorney Benbow previously represented Dollings in a divorce action involving one of the children. Although Kreis argues that the trial court erred in disqualifying Attorney Benbow from representing him, we find no error in the trial court's judgment.

**Facts and Procedural History**

**{¶2}** Dustin Matthew Kreis and Caitlin Rebecca Dollings were in a relationship and had one child together, A.K., who was born in 2017. Kreis and Dollings resided together for three years after A.K. was born.

**{¶3}** In September 2022, Kreis filed a complaint in Muskingum County and asked the Domestic Relations Division there to recognize his status as the father of A.K. and to allocate parental rights and responsibilities between the parties. The trial court in that case granted temporary custody of A.K. to Kreis. The parties then agreed in June 2023 to the terms of a proposed court order that, once it was filed, designated Kreis as the residential and legal custodian of A.K. and granted supervised parenting time to Dollings.

**{¶4}** About ten months later, Kreis filed a motion asking the trial court to suspend Dollings's parenting time. A magistrate granted that motion in part, requiring Dollings to exercise all parenting time at a facility where her visitations with A.K. could be supervised.

**{¶5}** In July 2024, Kreis filed a new complaint seeking custody of a second child: L.D., who is Dollings's teenage daughter with her ex-husband.  Kreis contended that both L.D.'s father and Dollings were unsuitable as legal guardians for L.D. and that the teenager's interests would be best served if Kreis were granted legal custody.

**{¶6}** When Dollings filed her answer to that new complaint in September 2024, she also filed a motion asking the trial court to disqualify Kreis's attorney, Brian Benbow, from continuing to represent Kreis not only in the new case involving the custody of L.D. but also in the 2022 case involving the younger child A.K.  In her disqualification requests in the two cases, Dollings cited the fact that Benbow had represented Dollings in divorce proceedings involving L.D.'s father.

**{¶7}** The trial-court magistrate assigned to the two custody cases issued an order in October 2024 finding that an attorney-client relationship had existed between Dollings and Attorney Benbow when he represented Dollings in the prior divorce case, that the subject matter of the current custody cases was substantially related to the prior divorce case, and that Attorney Benbow had acquired confidential information through his representation of Dollings in that prior divorce case.  The magistrate found that a conflict of interest for Attorney Benbow now exists under Ohio Rule of Professional Conduct 1.9, and, therefore, the magistrate disqualified Benbow from representing Kreis in both of the ongoing child-custody cases.

**{¶8}** Kreis filed objections to the magistrate's decision.  The trial court then set a deadline for the parties to file written arguments and any evidence and also ordered Dollings to file a verified statement specifying the circumstances supporting her request for Benbow's disqualification.  In response, Dollings filed an affidavit stating that she had

discussed sensitive and confidential information with Attorney Benbow when he represented her in her prior divorce case, and she indicated that the two of them had talked confidentially about matters that would be directly related to custody issues in the present cases. Dollings also stated that her delay in raising the issue of Benbow's alleged conflict was attributable to the intimidation that she now feels as a result of past experiences with domestic violence. She explained, too, that she has struggled with substance abuse in recent years.

**{¶9}** The trial court issued judgment entries in December 2024 disqualifying Attorney Benbow from representing Kreis in both child-custody cases. It is from these entries that Kreis now appeals.

**Dollings's Motion Is Not Barred by Waiver or Laches**

**{¶10}** We choose to first address Kreis's argument that Dollings has waived any objection to Attorney Benbow's representation of Kreis by failing to file much earlier her motion seeking the recusal or disqualification of Attorney Benbow. In the alternative, Kreis argues that Dollings's request for disqualification is barred by the doctrines of estoppel or laches.

**{¶11}** "Waiver is the 'intentional relinquishment or abandonment of a known right.'" *State v. Hairston*, 2006-Ohio-4925, ¶ 9 (9th Dist.), quoting *United States v. Olano*, 507 U.S. 725, 733 (1993). "'Mere negligence, oversight, or thoughtlessness does not create a waiver.'" *Hicks v. Estate of Mulvaney*, 2008-Ohio-4391, ¶ 13 (2d Dist.), quoting *Russell v. City of Dayton*, 1984 WL 4896, * 3 (2d Dist. May 18, 1984). Waiver is established by demonstrating "(1) that the party knew of its right to assert an argument or defense and (2) that the totality of the circumstances establish that the party acted inconsistently with

that right." *Gembarski v. PartsSource, Inc.*, 2019-Ohio-3231, ¶ 25, citing *Donnell v. Parkcliffe Alzheimer's Community*, 2017-Ohio-7982, ¶ 21 (6th Dist.).

**{¶12}** The doctrine of estoppel, on the other hand, "'precludes a party from asserting certain facts where the party, by his conduct, has induced another to change his position in good faith reliance upon the party's conduct.'" *State Farm Mut. Auto. Ins. Co. v. Ingle*, 2008-Ohio-6726, ¶ 32 (2d Dist.), quoting *Turner Liquidating Co. v. St. Paul Surplus Lines Ins. Co.*, 93 Ohio App.3d 292, 295 (9th Dist. 1994).

**{¶13}** Attorney Benbow, without any objection from Dollings, represented Kreis for two years in the case involving the parental rights of and the custodial arrangements for A.K. Dollings first objected to Attorney Benbow's representation of Kreis after Kreis filed a second custody action seeking custody of Dollings's teenage child from her prior marriage.

**{¶14}** Dollings's delay in seeking Benbow's disqualification was not insignificant. In light of all of the circumstances, however, we cannot say that her delay amounts to an intentional abandonment of her right to seek the disqualification of Kreis's counsel.

**{¶15}** Dollings's affidavit, together with the allegations in Kreis's filings, shows that Dollings has struggled with alcoholism and has only recently achieved a period of sustained sobriety. Kreis's July 2024 filing of a complaint for custody of L.D. also appears to have served as the impetus for Dollings's request for Benbow's disqualification, which Dollings first sought in September 2024. Notably, too, the alleged conflict for Benbow involves his representation of Dollings in her divorce case against L.D.'s father, and Dollings indicated in her affidavit in the trial court that she and Attorney Benbow discussed custody arrangements for L.D. when Benbow represented Dollings in that divorce case.

{¶16} We find that Dollings's delay in raising the alleged conflict cannot rightly be characterized as an intentional waiver on her part of her right to seek the disqualification of Attorney Benbow. And we find nothing in the record showing that Dollings's delay in moving for disqualification induced Kries to change his position in reliance on Dollings's silence regarding Attorney Benbow's representation of Kreis. We conclude that Dollings did not waive her right to move for the disqualification of Attorney Benbow and that Dollings is not now estopped from doing so.

{¶17} Nor do we find that Dollings is barred from moving for disqualification by the doctrine of laches. "The Supreme Court of Ohio has stated that '[l]aches is an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party.'" *Wise v. Wise*, 86 Ohio App.3d 702, 705 (12th Dist. 1993), quoting *Connin v. Bailey*, 15 Ohio St.3d 34, 35 (1984). Delay alone does not equate to laches. *Id.* "The element of time is a factor in the doctrine of laches, but the application of the doctrine is not dependent so much upon the lapse of a given period of time as upon the relative status of the parties interested as of the time when the jurisdiction of the court could have been invoked and the time when it was actually invoked." *Kaifer v. Ohio Leather Co.*, 122 Ohio St. 476, 482 (1930). "An inexcusable delay which results in a material disadvantage to the party against whom the relief is sought" is a sufficient reason for applying the doctrine of laches. *Id.*

{¶18} A party can establish material prejudice by showing "either (1) the loss of evidence helpful to the [party's] case; or (2) a change in the [party's] position that would not have occurred had the [opposing party] not delayed in asserting her rights." *Weber v. Weber*, 2001 WL 1682945, * 6 (4th Dist. Dec. 27, 2001). "In a domestic relations case,

a trial court must have the discretion to do what is equitable based upon the facts and circumstances of the particular case." *Id.* at * 3, citing *Briganti v. Briganti*, 9 Ohio St.3d 220, 222 (1984). The application of the doctrine of laches is within the sound discretion of the trial court. *Id.* at * 6.

**{¶19}** In this case, the trial court held that although Dollings's delay in raising the issue of disqualification was unfortunate, that delay does not entitle Kreis and his counsel to engage in what the trial court viewed as an ongoing breach of the rules of professional conduct. Kreis has failed to show that Dollings's delay in moving for disqualification has caused or is likely to cause any material prejudice to him. Kreis in fact offered no evidence in the trial court about any prejudice flowing from Dollings's delay. He instead merely argued that prejudice will surely result if he must obtain new counsel now because Attorney Benbow has worked intermittently on the child-custody case involving A.K. for two years.

**{¶20}** Kreis has not demonstrated that retaining new counsel will result in material prejudice. Because a delay in and of itself does not constitute laches — and because Kreis has failed to establish that he will suffer material prejudice — we conclude that the doctrine of laches did not bar the trial court from considering the merits of Dollings's disqualification request.

## The Trial Court Did Not Err by Not Conducting an Evidentiary Hearing

**{¶21}** We next address Kreis's argument that the trial court erred by not holding an evidentiary hearing on Dollings's motion. In his response to Dollings's motion in the trial court, Kreis argued that the trial court should dismiss Dollings's motion without conducting an evidentiary hearing. Kreis contended that the trial court did not need to

conduct an evidentiary hearing and that he should not be expected to present any evidence or be subjected to an expensive and time-consuming hearing. Having been unsuccessful in the trial court with that argument, Kreis now takes the opposition position, contending here that the trial court had an obligation to conduct an evidentiary hearing.

{¶22} "The only instance in which the Supreme Court of Ohio has held that an evidentiary hearing is required is when 'ruling on a motion for disqualification of either an individual * * * or the entire firm * * * when an attorney has left a law firm and joined a firm representing the opposing party.'" (Omitted text in original.) *Luce v. Alcox*, 2005-Ohio-3373, ¶ 6 (10th Dist.), quoting *Kala v. Aluminum Smelting & Refining Co., Inc.*, 81 Ohio St.3d 1, 13 (1998). Other courts have likewise declined to expand the hearing requirement in *Kala* to circumstances other than the law-firm "side-switching" specifically addressed in that case. *See WFG Natl. Title Ins. Co. v. Meehan*, 2018-Ohio-491, ¶ 32 (8th Dist.) (noting that the trial court was not obligated to hold a hearing on the motion to disqualify or provide findings of fact); *Fletcher v. Greater Cleveland Regional Transit Auth.*, 2007-Ohio-5338, ¶ 16 (8th Dist.) (evidentiary hearing not necessary unless it is a "side-switching" case); and *Majestic Steel Serv., Inc,. v. DiSabato*, 1999 WL 961465, * 5 (8th Dist. Oct. 21, 1999) (court saw no reason to adopt the reasoning that a hearing is required on all motions to disqualify).

{¶23} Neither party asked the trial court to hold an evidentiary hearing. In fact, Kreis specifically requested that an evidentiary hearing not be held. The magistrate and the trial judge both gave the parties ample opportunity to present written arguments and evidence before issuing any rulings. We, therefore, conclude that the trial court did not

err in failing to hold an evidentiary hearing on the issue of the disqualification of Attorney Benbow.

**The Trial Court Properly Applied the *Dana* Test**

{¶24} We now address Kreis's arguments that the trial court misapplied the *Dana* test and that insufficient evidence supported the disqualification of Attorney Benbow.

{¶25} "The trial court has the inherent authority to supervise members of the bar appearing before it, and this necessarily includes the power to disqualify counsel in specific cases." *Hollis v. Hollis*, 124 Ohio App.3d 481, 484–485 (8th Dist. 1997), citing *Royal Indemn. Co. v. J.C. Penney Co.*, 27 Ohio St.3d 31, 33–34 (1986). The trial court has wide discretion in the consideration of whether to grant a motion to disqualify counsel. *Id.* at 485. The trial court's determination will not be reversed absent a showing of abuse of discretion. *Id.*, citing *Centimark Corp. v. Brown Sprinkler Serv., Inc.*, 85 Ohio App.3d 485, 487 (11th Dist.1993). The term "abuse of discretion" has been defined as "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶26} Trial courts should be mindful that disqualification is a drastic measure. *Musa v. Gillette Communications of Ohio, Inc.*, 94 Ohio App.3d 529, 533 (8th Dist. 1994). In *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, the U.S. Court of Appeals for the Sixth Circuit established a three-part test that trial courts should use when determining whether counsel should be subject to disqualification: "(1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification."

900 F.2d 882, 889 (6th Cir. 1990).  The party moving for disqualification bears the burden of demonstrating the necessity for removal.  *WFG*, 2018-Ohio-491, at ¶ 24 (8th Dist.), citing *Mentor Lagoons, Inc. v. Teague*, 71 Ohio App.3d 719, 724 (11th Dist. 1991).

{¶27}  The parties agree that Attorney Benbow represented Dollings in a prior divorce case.  The first prong of the *Dana* test — that a past attorney-client relationship existed between the party seeking disqualification and the attorney whom that party now seeks to disqualify — has been met.

{¶28}  Kreis argues here, though, that the subject matter of the prior attorney-client relationship is not substantially related to the matters now before the trial court.  Attorney Benbow represented Dollings in an action for divorce in 2012.  In that case, Dollings sought a divorce from her husband and requested full custody of their daughter, L.D. Dollings's husband did not participate in the divorce proceedings, and a divorce was granted in October 2012.

{¶29}  In September 2022, Attorney Benbow began representing Kreis in a custody action against Dollings regarding their daughter, A.K.  Then in July 2024, Attorney Benbow filed an action on behalf of Kreis seeking custody of Dollings's daughter, L.D. Both cases involve custody determinations of Dollings's children.

{¶30}  Many courts look to the governing code or codes of professional conduct for guidance in determining whether disqualification of counsel is proper.  *Morgan v. N. Coast Cable Co.*, 63 Ohio St.3d 156, 159 (1992).  Relevant in this case is Ohio Rule of Professional Conduct 1.9(a), which discusses an attorney's duties to former clients: "Unless the former client gives *informed consent*, *confirmed in writing*, a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in

the same or a *substantially related matter* in which that person's interests are materially adverse to the interests of the former client." (Emphasis in original.) And Ohio Rule of Professional Conduct 1.0(n) provides: "'Substantially related matter' denotes one that involves the same transaction or legal dispute or one in which there is a substantial risk that confidential factual information that would normally have been obtained in the prior representation of a client would materially advance the position of another client in a subsequent matter."

**{¶31}** The trial court determined that both the past divorce action in which Attorney Benbow represented Dollings and the two ongoing custody actions in which Attorney Benbow represents Kreis involve the custody of Dollings's children and her fitness as a parent. We agree with the trial court that the subject matter of the past and current court cases is substantially related, and therefore the second prong of the *Dana* test has been met.

**{¶32}** The third prong of the *Dana* test calls for trial courts to examine whether the attorney acquired confidential information from the party now seeking that attorney's disqualification. Attorney Benbow argues here that Dollings failed to present sufficient evidence and did not identify any specific confidences that were disclosed by Dollings during the divorce case. Dollings's trial-court affidavit states, in turn, that she did discuss sensitive and confidential information with Attorney Benbow when he represented her in the divorce case, though the affidavit does not divulge the specifics of those discussions.

**{¶33}** The trial court in this case concluded that Dollings, to prove that she had discussed confidential information with Attorney Benbow when he was her attorney several years ago, ought not be compelled to violate the attorney-client privilege by

disclosing that confidential information now. The trial court also held that where evidence indicates that an attorney acquired or could have acquired confidential information from a then-client during the course of an earlier representation, and now that information could be utilized by the attorney against the former client in current litigation, the court has a duty to disqualify counsel.

**{¶34}** "'[T]he general rule in disqualification cases has been that, upon proof of a former attorney-client relationship concerning substantially related matters, disclosure of confidences is presumed.'" *Wynveen v, Corsaro*, 2017-Ohio-9170, ¶ 36 (8th Dist.), quoting *City of Cleveland v. Cleveland Elec. Illum. Co.*, 440 F.Supp.193, 209 (N.D. Ohio 1976). *See also In re E.M.J.*, 2017-Ohio-1090, ¶ 17 (9th Dist.) ("Courts are to assume that during the course of the former representation, confidences were disclosed to the attorney bearing on the subject matter of the representation"); *Harsh v. Kwait*, 2000 WL 1474501, * 2 (8th Dist. Oct. 5, 2000) ("As a matter of law, the disclosure of confidences to one's attorney can be presumed and need not be proven by the moving party"); and *Brant v. Vitreo-Retinal Consultants, Inc.*, 2000 WL 502738, * 3 (5th Dist. Apr. 3, 2000) ("there is no necessity to demonstrate actual exposure to specific confidences which would benefit the present client").

**{¶35}** Kreis argues here — as he did in the trial court — that Dollings has failed to specify the confidential information that Attorney Benbow acquired during his prior representation of Dollings. We conclude, though, that we can rightly presume that Dollings and Attorney Benbow did in fact discuss confidential matters in the now-concluded divorce case and that Dollings would not want Benbow to either share that

information with his current client or use it against her in the ongoing custody cases.  The third prong of the *Dana* test has been met.

{¶36}  We find that the trial court had before it sufficient evidence to presume that Attorney Benbow acquired confidential information during his representation of Dollings in her divorce case.  We also find that the trial court properly applied the *Dana* test in determining that Attorney Benbow should be disqualified from representing Kreis in the ongoing custody cases in Muskingum County.

{¶37}  For these reasons, the judgment of the Domestic Relations Division of the Court of Common Pleas of Muskingum County is affirmed.

By: Gormley, J.

Hoffman, P.J. and

Montgomery, J. concur.